PRITCHETT-THOMAS COMPANY v. E. R. PENNEBAKER, et al.

Middle Section. July 20, 1929.

Petition for Certiorari denied by Supreme Court, December 21, 1929.

426

Littell Rust, of Nashville, for plaintiff in error.

Burch, Minor & McKay, of Memphis, and Geo. H. Armistead, Jr., of Nashville, for defendant in error.

FAW, P. J. Under a "Plan" formulated and adopted by the Standard Oil Company of Louisiana, its aged employees are "retired" on an "annuity," payable in monthly installments. E. R. Pennebaker was "retired" in accordance with the provisions of the "Plan," and received an "allowance" of $141.85 each month.

The question for decision in this case is, whether this "annuity," or "allowance," to Pennebaker is subject to execution by garnishment in the hands of the Standard Oil Company of Louisiana.

The Pritchett-Thomas Company obtained a judgment for $122.75 against Pennebaker in the court of a Justice of the Peace of Davidson county, Tennessee, on September 19, 1927, and from this judgment Pennebaker did not appeal. Thereafter an execution issued from said judgment and a garnishment notice was served on the Standard Oil Company of Louisiana. The Justice of the Peace gave judgment against the garnishee, upon its answer, for $70.50, and both the garnishee and the judgment debtor appealed to the circuit court of Davidson county, where the case was tried before the Honorable O. W. Hughes, Special Judge, without the intervention of a jury, and the court was of the opinion and adjudged that the plaintiff in error was entitled to recover only the sum of $13.20 from the garnishee, and as the garnishee had tendered that sum into court along with its original answer, the trial court adjudged that the plaintiff pay the costs of the cause, for which execution was awarded.

It should be said here that the sum of $13.20 tendered by the garnishee was an indebtedness of the garnishee to Pennebaker on an account having no relation to the "annuity," and which sum of $13.20 is not now in controversy.

Plaintiff filed a motion for a new trial, which was overruled, and thereupon, plaintiff prayed, obtained and perfected an appeal in the nature of a writ of error to the Supreme Court, but the Supreme Court transferred the case to this court.

The plaintiff in error, Pritchett-Thomas Company, hereinafter called plaintiff, has presented a number of assignments of error, but they are all included in the proposition that the trial court erred in holding that the allowance of $141.85 per month made by the Standard Oil Company of Louisiana to E. R. Pennebaker is not subject to garnishment.

The answer of the garnishee before the Justice of the Peace was as follows:

"In this cause comes the Standard Oil Company of Louisiana, garnishee, in response to a writ of garnishment issued December 20, 1927, in the above styled case, and for answer to said garnishment says that it is indebted to the said Ed. R. Pennebaker in the sum of $13.20 and that this is the sum total of the amount it owed him at the time of the service of the garnishment on your garnishee and is the total amount that it owed him since that time and up to and including the date of the filing of this answer; it has no effects, property, or choses in action of the said defendant in its hands or under its control, nor does it know of any assets or effects of the said defendant in the hands of any other persons. The said Ed. R. Pennebaker is not now an employee of this garnishee and has not been since prior to December 1, 1927.

"Wherefore. your garnishee prays as to whether or not it should pay the said sum of $13.20 into court, and it also prays to be hence discharged. It tenders the $13.20 into court with this answer."

In the circuit court, the garnishee, by leave of the court, filed an amended answer, as follows:

"In this cause comes the defendant, Standard Oil Company of Louisiana, garnishee, and leave of court having been first had and obtained, amends its answer as garnishee filed in this case, by adding thereto the following:

"The defendant Pennebaker in October 1927, had been in the employ of the garnishee for many years. During the past nine years or more the garnishee had had in force and effect an Annuities and Benefit Plan, the terms and provisions of which are fully set forth in a printed pamphlet here to the court shown and which is attached hereto as Exhibit A and asked to be taken as a part hereof.

"Pursuant to this plan, in October, 1927, said Pennebaker having, by reason of his age, become unable to further discharge his duties, was declared a beneficiary under said plan and allowed $141.85, per month, which sum was payable under and pursuant to said plan. This sum was payable monthly, and as a matter of fact was remitted to the beneficiary late in each succeeding month. The garnishee is advised by counsel and does believe, that under the terms of said plan this stipend to said Pennebaker is not subject to garnishment."

In addition to the above quoted answer of the garnishee (Shan. Code, sec. 4831), the evidence in the case consists of the oral testi-

428

mony of E. R. Pennebaker, the judgment debtor, and S. E. Kidd, an official of the Standard Oil Company of Louisiana, together with a pamphlet copy of the aforementioned "Plan" for the payment of "Annuities and Benefits" to employees of the Standard Oil Company of Louisiana, filed as an exhibit to its amended answer, and also filed as an exhibit to the testimony of the witness S. E. Kidd.

The consideration of the "Plan" is, of course, important in this case, and therefore, such parts of same as pertain to the payment of "Annuities" will be copied herein.

Part I and Part II of the "Plan" are as follows:

"Standard Oil Company of Louisiana,

"Plan for Annuities and Benefits.

"Part I.   Administration:

"This Plan shall be administered under the direction of the board of directors, by a committee appointed by the board, known as the 'Annuities and Benefits Committee.'

"This committee shall employ a secretary and such other help as may be needed.   It shall determine conclusively, for all parties, all questions arising in the administration of this Plan, with the exception that all decisions concerning the granting of regular and special annuity allowances shall be subject to the approval of the board.

"Part II.   Annuities:

"Section I.   Eligibility:

"All employees of this company are eligible for retirement on annuity under the following conditions:

"(a) Regular Retirement:

"All men who have reached the age of sixty-five years, and women fifty-five years, and who have been twenty years or longer in the service shall be retired on a regular allowance, unless, in individual cases, at the request of the employee, some later date be fixed by the board of directors for such retirement.

"(b)   Retirement at request of employee or at discretion of board:

"Any man who has reached the age of fifty-five years, or any woman fifty years, who has been thirty years or longer in the service, or any man who has reached the age of sixty years, who has been twenty years or longer in the service, may be retired on a regular allowance, either at his or her request, with the approval of the board, or, without the request of the employee, at the discretion of the board.

"(c)   Retirement at Discretion of Board:

"Any employee who has been ten years or longer in the service and who by physical examination is shown to be permanently totally incapacitated for service, or whose retirement on account of advancing years is, in the judgment of the board, advisable, may, at the discretion of the board, be retired and granted a regular or a special allowance.

"Section 2. Amount of Payments:

"(a) The payments for regular allowances which the board may authorize under this Plan shall be as follows:

"For each year of active service an allowance of two per cent of the average annual pay during the five years' next preceding retirement; but no regular allowance shall be less than $300 per annum or more than seventy-five per cent of such average annual pay.

"A retired employee whose annual pay during the five years next preceding his retirement has averaged $1080 or $90 per month, and whose period of service under the rules has been twenty-five years, will receive fifty-per cent of $90, or $45 per month.

"(b) The amount and duration of each special allowance shall be determined by the board.

"Section 3. General Annuity Rules:

"(a) Annuities are to be paid monthly by check to the order of the annuitant, mailed to his or her address.

"(b) Annuities terminate at the death of the employee, but the board may, at its discretion, in the case of annuitants not entitled to death benefits, continue the annuity to needy dependents for a period not to exceed one year, payment or payments to be made in such manner as the board may direct.

"(c) No one retired under this Plan shall be barred from engaging in any business not prejudicial to the interests of this company, but he cannot re-enter the service.

"(Note: In Part VI, Section 12, employees are given a definite guarantee by the company that regular annuities once granted in accordance with this Plan, will be continued for the life of the annuitant.)"

"Part III, Part IV, Part V and the first ten sections of Part VI relate to death benefits, accident disability benefits and sickness disability benefits, and have no relevancy to the present controversy.

"The remainder of the 'Plan' is contained in sections 11 and 12 of Part VI, which sections are as follows:

"Section II. Annuities and Benefits payable under this Plan shall be non-assignable and an attempted transfer or

pledge of the same will not be recognized by the board and may, at its discretion, work a forfeiture thereof. They shall not, under any circumstances, be or become an asset of a decedent's estate.

"Section 12. The Annuities and Benefits granted employees in accordance with this Plan have no relation whatever to the determination of the amount of wages or salaries to be paid by this company, but are granted as a voluntary reward for and in appreciation of faithful and efficient service, and as an incentive to further service, applicable to all employees, including officials, on equal terms. This Plan shall not be construed, however, as giving any employee the right to be retained in the service of the company, or any right or claim to an annuity or allowance after discharge from the service of the company, unless the right to such annuity or benefit has accrued prior to such discharge.

"The company reserves the right, at any time, at its discretion, to withdraw or modify this Plan either as to annuities or benefits; the company guarantees, however, that when a sickness disability has accrued to any employee, sickness benefits will be paid to such employee in accordance with the provisions, and subject to the conditions, of this Plan as it is in effect at the time such disability occurs. As to death benefits, the company guarantees that they will be paid in accordance with the Plan as it is in effect at the date of employee's death. As to Annuities, the company guarantees that when once an annuity has accrued and been granted as a regular allowance, it will be continued for the life of the annuitant, subject, however, to the provisions of this Plan, as it is in effect at the time such annuity is granted.

"To assure, as far as practicable, the permanence of this Annuity Plan, the company has set aside a fund estimated as sufficient to cover its liability on account of the present Annuity Roll. To this fund it is proposed to add such annual appropriations as may be necessary to maintain the fund in the proper ratio to the total annuities then in force. Should these appropriations prove by experience to be in excess of an amount that in the opinion of the board is justifiable, the board reserves the right to reduce the rate of all annuities to be granted to employees retired thereafter."

E. R. Pennebaker, the judgment debtor, testified that he is sixty-eight years of age and a married man; that he has been married fifty-one years; that he was in the "actual service" of the Standard Oil Company of Louisiana "something over twenty-six years;" that he was "let out of the service" on account of his age and

health; that he is suffering from high blood pressure and has not been able to do any physical work since the first of October (1927).

Mr. Pennebaker's cross-examination was as follows:

"By Mr. Rust:

"Q. Were you notified in advance this pension was going to be granted, or did it come suddenly? A. It came suddenly. I was examined in September. They examined me twice a year, and the first day of October, I was notified.

"Q. You didn't make any application for this pension? A. No, sir, didn't want it.

"Q. And wanted to continue in the service? A. Yes, sir.

"Q. Wanted to continue in your regular work? A. Yes, sir.

"Q. And since that time you are conducting a little cigar stand? A. I was at one time, my son was running that for me.

"Q. You are not interested in that now? A. No, sir.

"Q. You are not doing anything now? A. Not at all.

"Mr. Minor:

"Q. Your services ended about the first of October? A. Yes, sir, the 4th day of October, I left the office."

The testimony of S. E. Kidd, is, in full, as follows:

"By Mr. Minor:

"Q. You are Mr. S. E. Kidd of Baton Rouge, La.? A. Yes, sir.

"Q. Are you connected with the Standard Oil Company of Louisiana? A. I am, yes, sir.

"Q. How long has that connection been going on? A. Since the latter part of 1911, almost seventeen years.

"Q. To whose office are you attached? A. To the office of Mr. A. K. Garden, Vice President and Treasurer of the company.

"Q. Where is the company's principal office? A. Baton Rouge, La.

"Q. Is that where Mr. Gordon and you have your offices? A. Yes, sir.

"Q. What is your connection with what is known as the Annuities and Benefits Plan? A. The Annuities and Benefits Plan is administered under the direct supervision of Mr. Gordon, the vice president and treasurer, and I am assistant to him.

"Q. The details of its management, then, largely fall on you? A. Yes, sir.

"Q. But, of course, you consult with him? A. Quite frequently and of necessity have considerable assistance in these matters from a clerical force of a clerical character.

"Q. Have you a copy of the printed pamphlet setting out the Annuities and Benefits Plan? A. I have.

"Q. Will you identify this pamphlet of eighteen pages as the paper covering the Annuities and Benefits Plan? A. Yes, sir, that is it.

"Mr. Minor: I offer the pamphlet in evidence.

"Q. What is the purpose of this Plan, Mr. Kidd? A. The plan provides benefits to its employees in the nature of sickness and accident benefits and in annuities or pensions. It also provides death benefits to a deceased employee's dependants.

"Q. Who pays the expense of it? A. The Standard Oil Company of Louisiana, pays the entire expense.

"Q. Is any sum whatever deducted from the wages of the employees, or is there any other deduction whatever? A. None whatever, the company pays the whole expense.

"Q. It is a guaranty, therefore, from the company? A. Yes, sir.

"Q. Does it have any relation to the pay of the employees? A. None whatever.

"Q. I call your attention to Section II on page 16 which provides that annuities and benefits under this plan shall be non-assignable and an attempted transfer or pledge of the same will not be recognized by the board. What was the purpose of that? A. To assure when an annuity was once granted, it would be paid to the recipient thereof, into his hands, and no one else's.

"Q. To protect him from his own misfortune and maladministration of his own affairs? A. Exactly, sir.

"Q. Mr. Kidd, here is a copy of a letter dated October 14, 1927, addressed to Mr. Edwin R. Pennebaker, Nashville, and signed by D. R. Weller, President. I will ask you whether or not such letter was written from the office of the company and if so will you read it into the record? A. It was. It is dated at Baton Rouge, La., October 14, 1927, and reads: 'Mr. Edwin R. Pennebaker, Standard Oil Co., of La., Nashville, Tenn.; Dear Sir: On the recommendation of the Annuities and Benefits Committee and the Management, the Board of Directors, in recognition of your long and faithful services, has authorized your retirement with an allowance of $141.85, per month, under the provisions of Part Two of the Annuities and Benefits Plan. Your retirement will be effective October 1, 1927, and the company guarantees that the allowance will be continued for the remainder of your life, in accordance with and subject to the provisions of the Plan

as now in effect, a copy of which is attached. The board extends to you its best wishes and hopes that the retirement allowance will permit you to take a well-earned rest, and that you will enjoy its benefits for many years to come. On behalf of the Board of Directors.'

"Yours very truly,
"D. R. Waller, President."

"Q. That letter was sent to Mr. Pennebaker, was it? A. Yes, sir.

"Q. And in pursuance thereto were remittances made to him? A. Yes, at the close of each month.

"Q. About what time were the remittances made under this Plan? A. I should say a couple of days before the close of the month, so the checks would be in his hands by the first of the succeeding month.

"Q. Therefore, since October 14, 1927, Mr. Pennebaker has been a beneficiary to the extent of $141.85 per month under this Annuities and Benefits Plan? A. He has.

"Q. Has your company recognized or in any way assented to any efforts on Mr. Pennebaker's part to assign the benefits due under this plan? A. None whatever, it is contrary to the provisions of the Plan itself.

CROSS-EXAMINATION:

"By Mr. Rust:

"Q. The Standard Oil Company of Louisiana, operates the business of the Standard Oil Company in Tennessee, does it not? A. Yes, sir.

"Q. Mr. Pennebaker is a resident of Tennessee? A. I believe he is.

"Q. And of Nashville? A. Yes.

"Q. His territory was in Tennessee, working for the Standard Oil Company? A. I think that is correct, yes, sir.

"Q. The Standard Oil Company of Louisiana has operated in Tennessee since the Standard Oil Company of Kentucky was asked to retire? A. That was before my connection with the company, but I believe the Standard Oil Company of Louisiana has operated in this State since May, 1910, though I may be mistaken as to the date.

"Q. Under this Plan, I believe the length of service of the employee is taken into consideration and he gets two per cent of the amount of salary for each year of his serving with the company? A. Yes, sir.

"Q. And therefore, Mr. Pennebaker, having been in the service twenty-six years he gets fifty-two per cent of the salary he received at the time of his retirement, is that correct? A.

To be accurate, he was credited with service amounting to twenty-six years, ten months and nineteen days and he was given credit for two per cent for each year or fraction thereof, amounting to fifty-three and five-sixths per cent.

"Q. Fifty-three and five-sixths per cent of the salary he was receiving at the time he was retired? A. Yes, sir.

"Q. Then, of course, this pension is with an idea of the employee staying with the company and is a reward for their length of service with the company? A. Yes, sir.

"Q. The Standard Oil Company of Louisiana, is domesticated in Tennessee to do business, is it not? A. Yes, sir.

"Q. I believe this pension was allowed Mr. Pennebaker without any request on his part. Mr. Pennebaker, I believe testified this pension was allowed without any request on his part, do you say that? A. Mr. Pennebaker signed an application for this annuity before a Notary Public on August 25, 1927.

"Q. Is that a formal application that is made every time a man has a physical examination made? A. No, sir.

"Q. Do you have your employees examined in a physical way every year, is it a rule of the company that the employees should take a physical examination every year, or what is the rule about the physical examination? A. I am not informed on that question in Tennessee, though we do examine our employees at the refinery at Baton Rouge, Louisiana, where we maintain our own hospital facilities and medical examiners, but I don't know whether they examine their employees in the field each year or not.

"Q. At the time those examinations are made, do they sign a formal request for retirement so, if the medical examiner decides that the employee is not fit to work any longer that they will have that signed application for his retirement? A. No, sir.

"Q. That is not a part of the system for the medical examination? A. No.

"Q. A man can be retired on this pension, of course, and then be reinstated and go back to work for the company? A. No, sir, he cannot. The Plan specifically provides that once an employee has been retired on an annuity he cannot re-enter the service of the company.

"Q. Is that an iron clad rule? A. I know of no case where we have deviated from it and I believe it is as binding as any of the other provisions in the plan.

"Q. I have forgotten what date you said Mr. Pennebaker made application. I show you the application? A. I have a

photostatic copy. The application was sworn to on August 25, 1927.

## RE-DIRECT EXAMINATION.

"By Mr. Minor:

"Q. Have not you the wrong application? What is the date of it? A. The face of it appears to be dated September 10. It was apparently not dated at the time it was prepared, but it is acknowledged on the second page thereof on August 25, 1927.

"Q. Was there a resolution of the board of directors authorizing this annuity to Mr. Pennebaker? A. There was. The board of directors considers each retirement and adopts a specific resolution granting that retirement.

"Q. I will now read that resolution and ask you if it is correct: 'Whereas, at a special meeting held June 11, 1918, the board of directors of the Standard Oil Company, of Louisiana, adopted a Plan for Annuities and Benefits, and amended Part Two, Section Two, Paragraph A, thereof at a special meeting held January 2, 1926; and Whereas, Edwin Ruthven Pennebaker has applied for annuity under said plan by application on form A. B. C.-7, dated September 16, 1926, and has been found to be entitled thereto, Now, Therefore, Be it Resolved that Edwin Ruthven Pennebaker be granted regular Class A Annuity under said plan, payable $141.85 per month, effective October 1, 1927, guaranteed for the remainder of his life?' A. That is the resolution adopted by the board of directors of the Standard Oil Company of Louisiana, on October 6, 1927.

"Q. How long has this Plan been in force? The resolution recites since June, 1918, is that correct? A. Yes, sir.

"Q. I believe you say Mr. Pennebaker had been at that time an employee for many years? A. He had, yes, sir."

The learned Special Judge who tried the case below stated his views of the case presented by the foregoing facts in a brief opinion brought up in the bill of exceptions, as follows:

"Gentlemen, in this case a judgment was obtained against E. R. Pennebaker by Pritchett-Thomas Co., in the Magistrate's Court, the judgment being in the sum of $122.75. An execution was issued and later garnishment was served on the Standard Oil Co., of La. It seemed that the Standard Oil Co., owed Mr. Pennebaker the sum of $13.20 for certain expenses which he had incurred for the Standard Oil Co.

"It also seems that under the Standard Oil Company's plan of operation it had a system by which it retires its employees

on a pension. That pension, of course, is voluntary on the part of the Standard Oil Co., that is, it is not based in any way upon the services performed, or rather, it is not given in consideration in the way of salary for services performed, but is a gratuity on the part of the Standard Oil Company. That pension might be provided or not provided for its employees, as the Standard Oil Company might see fit. If it does provide a pension, it might provide it in any amount it saw fit or not provide it at all; it might provide that pension would be paid upon any terms that the Standard Oil Co., might see fit to pay the pension so long as it did not conflict with the laws of this State.

"The plan does provide that these annuities are not assignable by the employee. If they are not assignable by him, of course that amounts to the same thing as to say they will be paid only to the employee. It is not a salary that is due the employee, but it is merely a gratuity and the Standard Oil Company has in effect constituted itself a trustee to pay these annuities. It has not only constituted itself the trustee, but it furnishes the funds itself, and has the right to dispose of those trust funds in accordance with rules and plans which it has laid down in advance, to dispose of them by.

"Therefore since these annuities are not assignable by the employee voluntarily, they may not be assigned involuntarily. I am going to dismiss the garnishment in so far as it undertakes to take in all this trust fund. As I understand the $13.20 has been tendered into court, and that tender has been kept up, and I will dismiss the writ of garnishment except as to that amount, and of course, the costs of the case will fall on the plaintiff in the case."

It is seen that the fund which the plaintiff is seeking, by process of garnishment, to subject to the satisfaction of its judgment is not a fund which has at any time belonged to the judgment debtor, but is a fund which the garnishee voluntarily promised to donate to the judgment debtor at a stated period, in a specified manner, subject to specified restrictions and limitations, which restrictions and limitations were manifestly intended to effectuate the primary purpose of the donor to provide a support for the recipient of the donation in his old age, and (as said by the witness Kidd), "to protect him from his own misfortune and maladministration of his own affairs."

The company guaranteed that when once an annuity had accrued and been granted as a regular allowance, it would be continued for the life of the annuitant, but subject, however, to the

.provisions of the "Plan" as it was in effect at the time such annuity was granted.

According to the "Plan," as it was in effect at the time the annuity to Pennebaker was granted, the annuity could not, under any circumstances, become an asset of the estate of the annuitant, and it was not assignable by the annuitant, but was "to be paid monthly by check to the order of the annuitant, mailed to his or her address."

"A sale under execution or attachment is an assignment to all intents and purposes." Reed v. Estes, 113 Tenn., 200, 203, 80 S. W., 1086.

"It is undoubtedly true as a legal proposition, that a defendant having no estate in property which he can transfer has none which is subject to execution, for the judgment, the levy, and the sale under execution ordinarily accomplishes no other purpose than might have been realized by a transfer made by the defendant at the date of the inception of the judgment or execution lien." Note, 88 Am. St. R., p. 207.

The donor, in dealing with its own property upon which the donee or his creditors had no claim, could attach to the donation such lawful conditions as it saw fit. We are not aware of any rule of law or public policy "which demands that the property of such donor shall be subject to the debts of the beneficiary, and the creditor has no right to complain that the owner of the property, in the exercise of his right of absolute disposition, has not seen fit to give the property to the creditor, but has left it out of his reach." (86 Tenn., p. 111).

The plaintiff's assignments of error are overruled and the judgment of the circuit court is affirmed, and judgment will be entered accordingly.

The costs of the appeal will be adjudged against the plaintiff and the surety on its appeal bond.

Crownover and DeWitt, JJ., concur.