## SCHOFIELD v. ZION'S CO-OP. MERCANTILE INSTITUTION.
## TINGEY v. Z. C. M. I.

No. 5463. Decided December 14, 1934. (39 P. [2d] 342.)

*Bagley, Judd & Ray,* of Salt Lake City, for appellant.

*Willard Hanson,* of Salt Lake City, for respondents.

LARSON, District Judge.

This is an appeal from a judgment entered in the district court of Salt Lake county in favor of the plaintiffs and against the defendant, for money alleged to be due plaintiffs from defendant under a pension system established by the defendant in its institution some years ago. The two cases involve substantially the same facts, and therefore under stipulation of counsel were tried together and are now here on appeal on one record under the same stipulation.

The defendant corporation, by resolution of its board of directors, September 21, 1911, established the system in question "for the purpose of promoting the welfare of the officers and employees of this institution, and to encourage long and faithful service." The terms and conditions of the pension system were distributed to all the employees in a printed folder. It contains sixteen paragraphs. Those essential to the decision of the present cases are as follows:

"For the purpose of promoting the welfare of the officers and employees of this institution, and to encourage long and faithful service, the Board of Directors hereby established the following Pension System:

"1. The administration of the Pension System shall be the Executive Committee and General Manager, to be known as the Board of Pensions. This Board shall have power to make and enforce rules and regulations for the efficient operation of the department. It shall also determine the eligibility of employees to receive pension allowances; to fix the amount of such allowances, and to prescribe the conditions under which such allowances may inure. The action of the Board of Pensions shall be final and conclusive.

"2. The benefits of the Pension System shall apply only to those persons who have been required to give their entire time to the Institution.

"3. All officers and employees who have attained the age of 65 years and have served the Institution honorably for twenty years shall be entitled to retire with pension.

"4. Any employee may be retired with pension before the age limit by order of the Board of Pensions. * * *

"6. The amount of pension to which an employee is entitled at 65 shall be the amount paid him when he actually does retire. * * *

"12. The rate of pension is to be based on salary and length of service as follows: A monthly pension of one per cent of the average monthly salary, as shown by the payroll for the last ten years, multiplied by years of service. * * *

"15. Neither the action of the Board of Directors in establishing a System of Pensions, nor any other action now or hereafter taken by them or the Board of Pensions in the inauguration and operation of a pension department shall be construed as giving to any officer or employee of the institution a right to be retained in its service, or any right or claim to any pension allowance; and the Institution expressly reserves its right and privilege to discharge at any time any officer or employee when the interest of the Institution in its judgment may so require, without liability for any claim for pension or other allowance than wages due and unpaid.

"16. The Board of Directors reserves the right to change or amend any of the foregoing rules and regulations at any time, and to change the basis of pension allowances by increasing or reducing the same, whenever, in its judgment, the welfare of the Institution may require such change; and the decision of said Board of Directors, in establishing such new basis shall be absolutely conclusive."

On January 1, 1929, the plaintiff Nephi Y. Schofield retired from service and was allowed a pension under the system in the sum of $126.75 a month. He was credit manager of the defendant at the time of his retirement. On January 1, 1930, the plaintiff Franklin S. Tingey retired from service and was allowed a pension under the system in the sum of $186.75 a month. He was store superintendent of the defendant at the time he retired, and had served as assistant manager and as a member of the executive committee. Employees contributed nothing for the purpose of

paying these pensions, and no pension fund was created. The defendant paid the pension allowance out of its income. The original pension allowances were paid monthly to pensioners of the defendant to and inclusive of the month of June, 1932.

Under date of August 24, 1932, the board of directors of the defendant, by resolution, revised the pension allowances effective as of July 1, 1932. The plaintiffs were offered, but refused to accept, the revised pension allowances fixed for them, namely, $65 a month for Mr. Schofield and $75 for Mr. Tingey, and instituted their respective actions to enforce the payment of the original allowances.

Numerous errors are assigned by appellant as to the admission and rejection of evidence by the trial court, but the principal question presented involves the construction and interpretation of the pension system. Plaintiffs contend that the pension system constituted, from the time of their retirement, a binding contract to pay them the allowed pension for life. Defendant, on the other hand, contends that the pension system was a mere gratuity from the defendant, terminable at the will or judgment of the defendant corporation.

Did the pension system constitute a binding contract between defendant corporation and the pensioners which gave them a vested right to the amount of pension as originally fixed and leave no authority in the board of directors of the defendant corporation to in any way, for any cause, modify or change the amount of the pension? What were the rights and liabilities of the parties created by the pension system of 1911 and not modified as far as material here, until after the retirement of the plaintiffs and the fixing of their pension allowances?

Appellant vigorously asserts that the pension system, as set forth in the printed folder, is clear and certain and needs no extraneous evidence to explain or interpret it, and with this contention we are inclined to agree. The pension system, as set forth in the printed folder, states its purpose,

"to promote the welfare of the employees and to encourage long and faithful service"; it identifies the parties, the defendant corporation on the one hand, and, on the other, "employees who have attained the age of 65 years and served the company faithfully and satisfactorily for 20 years" (consecutive, except by special permission) ; it provides for compulsory retirement of the employee from service and limits his future activities elsewhere; it fixes the amount of allowance based upon years of service and salary, but no years of service over 65 years of age can be included. There is nothing indefinite about that; it has competent parties, a valid consideration, a lawful purpose, and is not against public policy.

Appellant takes the position that the pension system constituted, not a contractual relationship, but a mere offer by the company of a gratuity to its employees, in which the employee could obtain no vested right; that the pension system does not constitute an offer which is subject to acceptance by the employee so as to create a contract. It may be conceded that the system is not such an offer as may be made into a binding contract by merely verbal acceptance, nor by the act of the party in entering the services of the institution. Therefore, argues the appellant, it is like a pension given by the government as a gratuity. Case here is clearly distinguishable from government pensions. There, the pension is set up after service performed, in appreciation for the work done or service rendered. Here the promise of a pension is made in advance of work to "encourage long and faithful service." Should the government say that to all persons who shall enlist in the army and serve the full period of enlistment, with no demerit mark on his service record, a bonus of $500 would be given upon his retirement, would any one say that it constituted a mere gratuity like a pension bill passed by Congress for the veterans of past wars? Could one offering a reward for the capture of a culprit, after the capture had been made, contend that his offer was not subject to such an acceptance as would con-

stitute an obligation on his part to pay the reward? Until the acceptor has completed the act called for in the offer, it usually may be withdrawn, limited, or modified. The offer in such cases constitutes a promise for a completed act, and once the act is completed by the acceptor the offer cannot be modified or withdrawn. It becomes a binding contract. Such is the case in actions brought to recover bonuses offered to employees in consideration of their remaining in the service of the employer for a stipulated period of time or for doing a stipulated amount of business for the employer. Once the conditions of the employment and bonus offer have been fulfilled, they are uniformly held to be binding.

In the pension system here involved, the company said to its employees: Any one who shall serve me faithfully for 20 years and attain the age of 65 years shall be entitled to retire with pension based upon his past salary, which offer and promise is made to induce you to continue in my employ, to render faithful service to me without seeking other employment or worrying about provision for your welfare when times takes its toll on your strength and opportunity. It is offered to "promote the welfare of the employee" (to relieve him from worry and provide for his old age), and "to encourage long and faithful service" (for the benefit of the company) ; the employee who has met the requirements "shall be entitled to retire with pension," not *may be* retired with pension, but *shall have the right* to retire with pension. It further provides that "the amount of pension to which an employee is entitled at 65" (not that he may draw, but that he shall have a right to draw) shall be computed according to his past salary and years of service. (Parenthetical expressions ours.)

Plaintiffs, after this offer by the defendant, continued in its employment, served it faithfully for 20 years, and attained the age of 65 years. The board of pensions then "determined their eligibility to receive pension allowance"— that is, determined that they had met the requirements of

the offer and had earned their pensions; it fixed the amount of pension and made the allowance of the same and retired the plaintiffs from further service. Clearly, such facts, circumstances, and history do not evidence an offer of a gratuity, but an offer to pay certain sums when plaintiffs shall have completely performed a certain set of acts, offered as an inducement to them to perform the acts, and given as a consideration for their complete performance. When the plaintiffs had completely performed their obligations and the board of pensions had determined their right to pension, made allowance thereof, and retired them, the contract was complete and binding, and not subject to modification by the company without consent of plaintiffs.

It is elemental, in construing a contract, that its purpose, its nature, and subject-matter should be considered. A construction giving an instrument a legal effect to accomplish its purpose will be adopted when it can reasonably be done, and between two possible constructions that will be adopted which establishes a valid contract. *Hunt* v. *Hunt,* 119 Ky. 39, 82 S. W. 998, 68 L. R. A. 180; *Mebius & Drescher Co.* v. *Mills,* 150 Cal. 229, 88 P. 917.

Where services are performed under a statute providing for pensions, the pension becomes part of the contemplated compensation for the services, and in a sense becomes part of the contract of employment. 43 C. J. 813; *Langer* v. *Superior Steel Corp.,* 105 Pa. Super. 579, 161 A. 571; *McLemore* v. *Western Union Tel. Co.,* 88 Or. 228, 171 P. 390, 1049.

"It appears, accordingly, that if one enters into a contract of employment under an agreement that he shall be paid a certain salary by the week, or some other stated period, and, in addition, a bonus, in case he serves for a specified length of time, there is no reason for refusing to enforce the promise to pay the bonus, in case the employee serves the stipulated time, on the ground that it was a promise of a mere gratuity. This is true if the contract contemplates a continuance of the employment for a definite term, and the promise of the bonus is made at the time the contract is entered into. And if no time is fixed for the duration of the contract of employment, but the employee en-

ters upon or continues in the service under an offer of a bonus if he remains therein for a certain time, his service, in case he remains the required time, constitutes an acceptance of the offer of the employer to pay the bonus, and after that acceptance the offer cannot be withdrawn, but may be enforced by the employee." 28 A. L. R. 332; *Kerbaugh, Inc.* v. *Gray*, 129 C. C. A. 326, 212 F. 716.

" 'Where an employer promises a bonus or a share of the profits to an employee employed for an indefinite term, to be paid if he works continuously for a given period, is the employer bound by his promise when the employee accepts the offer by performance?' The complaint states an enforceable contract, and the answer to the question is, 'Yes.' " *Scott* v. *J. F. Duthie & Co.*, 125 Wash. 470, 216 P. 853, 28 A. L. R. 328.

Many of the authorities cited by appellant confirm rather than oppose this conclusion. In *Beutel* v. *Foreman*, 288 Ill. 106, 123 N. E. 270, under the Police Pension Act, the pension had not been allowed, because plaintiff had not met the requirements for pension as the act existed at the time he applied for pension. During his term of service but before he sought his pension, the act had been amended increasing the age requirement. The court held that the Police Pension Act was subject to amendment, and one who sought a pension thereunder must meet the requirements of the act at the time he sought his pension. So the case of *McNevin* v. *Solvay Process Co.*, 32 App. Div. 610, 53 N. Y. S. 98, Id., 167 N. Y. 530, 60 N. E. 1115, quoted extensively by appellant, plaintiff had not met the requirements of the pension rule; he quit the employ of the defendant company and brought suit to recover what he claimed was an interest or share in the pension fund, all of which was furnished by the company. The object of the pension there set forth for the fund was:

"To provide a means of support when by reason of accident, sickness, or advanced age labor must cease."

McNevin was not old, he was not sick, he had met with no accident; he just quit work. The rules further provided specifically that the money set apart for the fund and pen-

sions paid were gifts and remained the property of the company until paid over. The rule provided:

"An employee cannot in any case, demand payment of the sum credited to his account except when the defendant shall adjudge the amount to be payable, according to the rules and regulations."

The difference between these rules and facts and those in the case at bar is self-evident. To like effect is the *Dolge Case,* 70 App. Div. 517, 75 N. Y. S. 386, cited by appellant. There the articles expressly provided that the pensions were voluntary on the part of Dolge, and the employee could enforce no right in the fund. *Pritchett-Thomas Company* v. *Pennebaker,* 10 Tenn. App. 425, was not a case between the company and the employee, but involved the question as to whether annuities under pension plans were subject to garnishment.

The case most nearly akin to the instant one is *Cowles* v. *Morris & Co.,* 330 Ill. 11, 161 N. E. 150, 154, where a pension fund was established by Morris & Company for its employees. By rule 7 an employee who had rendered 20 years' service and attained the age of 65 years was entitled to a pension for life on retiring from service. Rule 31 provided:

"No pensioner, even after payment shall have been approved and ordered, shall be entitled to have any part of the capital or income of the company set aside to provide for the same. All sums of money shall be paid out of the pension fund."

By rule 32 it was provided that the committee may annul, alter, add to, or amend any of the rules and regulations governing the fund.

Morris & Co. sold its business to Armour & Co., and ceased doing business. The plaintiff contended that he had a vested right in the pension fund, and Morris & Co. were obligated to continue the pension fund until all the pensioners were fully paid. The action was based upon a claim that

there was an implied agreement on the part of Morris & Co. to continue in business so as to continue the fund in existence. The court says:

"Whatever rights were acquired by the pensioners in this case were acquired under the rules. The rules affecting the disposition of the funds or the right of any member to them are  *  *  *  rule 31, providing, in effect, that all pensions are to be paid out of the fund, and that no pensioner has a right to look to the capital or income of the company to meet such payments. When counsel argue about vested rights, it must be borne in mind that it must first be determined just what rights exist. It clearly appears from the rules that plaintiffs in error have no vested right to any of the property or income of Morris & Co. to pay their pensions, but must look wholly to the fund [which had been set up as the source from which the pensions were to be paid].  *  *  *

"In support of their argument for the existence of an implied contract on the part of Morris & Co. in this case, counsel for plaintiffs in error cite *McLemore* v. *Western Union Telegraph Co.*, 88 Or. 237, 171 P. 390, 1049. In that case the Western Union Telegraph Company created a plan for employees' pensions. The company created, controlled, and administered the fund, and guaranteed to keep the same in its original amount. The court in that case held that the defendant was liable under its contract, and that it was not a mere benefaction."

It will be noted that in the case at bar the company did not set up a pension fund to which the pensioners should look, but undertook to pay the pension, not from any specific fund, but as an obligation and undertaking of the company. The only cases we have found which hold that a pension agreement performed by the employee and whose pension has been fixed cannot be enforced are cases where a specific pension fund has been set up and the employee sought to enforce his rights exclusive of the fund in derogation of the rule governing his pension that he must look solely to the fund for its payment.

But the appellant asserts that the provisions of paragraphs 15 and 16 of the rules vest in the board of directors the power to modify and change the system at their judgment, and therefore it could not be a binding contract. Does sec-

tion 15 or 16 vest any such power in the board of directors? Section 15 provides that neither the establishment of the system nor any action of the board of pensions in operating the department "shall be construed as giving any officer or employee of the Institution a right to be retained in service or any right to claim any pension allowance." This definitely applies to officers and employees. A retired pensioner is not an employee. He ceased to be an employee when he was pensioned. This is further made clear by the provision in the same section that "the Institution expressly reserves the right and privilege to discharge at any time any officer or employee * * * without liability for pension or other allowances than wages due and unpaid." The definite denial to one still employed to claim any pension rights and the reservation to the company of the right to discharge any employee at any time without liability for pension, if bearing at all on the rights of a pensioner, would tend to negative any contention that the company reserved any right to change the status of one retired and not now an employee, or to deny such the right to claim a pension. The import of section 15 is clearly to the effect that the action of the pension board in fixing pensions of those who have retired shall not bind the institution to make the same allowance to future pensioners who have not yet earned their pension and been retired.

Under the provisions of section 16 "the Board of Directors reserves the right to change or amend any of the foregoing rules and regulations at any time and to change the basis of pension allowances by increasing or reducing the same." What rules and regulations may the board change? Why, clearly, the rules and regulations governing the conditions under which an employee may earn a pension; the rules governing the objects of the pension system "to encourage long and faithful service and promote the welfare of its employees." The rules affecting the institution in its relationship to its employees as announced in the preamble may be changed. The institution has no rules and regula-

tions governing its ex-employees or retired employees, and so could not change them.

The board reserves the right "to change the basis of pension allowances by increasing or reducing the same." The basis of pension allowances is the basis fixed for computing the pension when the same shall have been earned; when the employee has met the requirements of the rules and regulations and is retired. What, then, has he earned as a pension? The amount thereof is determined by the basis fixed in the rule, and, applying the formula or rule then in force to the facts in this case as to salary and time of service, the amount of his pension is determined and allowed by the board of pensions, certified to the company, and the employee then retired upon such allowance. Until the pension has been earned, until the employee shall have been found entitled to retire and to a pension, the board of directors reserves the right to change the basis of allowance, that is, the basis for computing the pension upon which the employee is to be retired.

The pension allowance is the amount allowed by the pension board, the amount fixed by them as earned and due the employee upon his retirement. It signifies the determining of the amount earned as a pension, the approval of the amount by the pension board, and setting it up as a fixed charge that has been allowed against the institution. When it has been determined, fixed, and set up, when it has been allowed by the pension board and the employee retired, there is no longer any reason in saying the board can change the rule for computing and allowing that which has already been computed, allowed, and awarded as earned by and due the employee as a pension for his long and faithful service to the company. It seems clear that sections 15 and 16 have no application to a retired pensioner whose pension has been fixed and determined.

Appellant's other assignments of error related to the admission in evidence of certain letters written by the

general manager or secretary of the company to the plaintiffs notifying them that their pensions had been allowed at a certain sum payable monthly which sum would be paid to them during their life. As to such letters, we see no merit in the objection urged against them. They were the declarations or notification from the company to the plaintiffs that they had been retired (laid off from further employment), that they had been found entitled to a pension, that the same had been allowed, and advising plaintiffs as to the amount thereof. For such purposes, the letters were clearly admissible. Furthermore no dispute is made in the record as to the facts recited in the letters, so they could in no wise be prejudicial.

Other letters received in evidence were written by the management of the institution to other pensioners than the plaintiffs. They were offered and received over defendant's objection for the purpose of showing that the company itself had recognized the obligation to pay a pension, once it was fixed and awarded, for life. In the light of our holding that the pension system constituted a binding contract to pay for life a pension award once earned and allowed, and that such is apparent on the face of the pension system rules, the admission of these letters which simply tended to confirm the construction of the rule which the court must make from the instrument itself, no injury can be predicated thereon.

Complaint is made that the court did not incorporate in its findings of fact all the rules and regulations of the pension system. The findings of fact made by the trial court were as broad as the issues raised in the pleadings. Such rules of the pension system as were involved in the issues and essential to a determination of the cause were included in the findings of the court and sustain the judgment entered.

We find no prejudicial error in the record, and the judgment is affirmed. Respondents to recover their costs.

STRAUP, C. J., and ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.

MOFFAT, J., being disqualified, did not participate herein.