### HUGHES et al. v. ENCYCLOPAEDIA BRITANNICA, Inc.

#### No. 50 C 1652.

United States District Court
N. D. Illinois, E. D.

Jan. 11, 1952.

Rubenstein & Becker, Chicago, Ill., for plaintiff.

Lederer, Livingston, Kahn & Adsit, Chicago, Ill., for defendant.

CAMPBELL, District Judge.

The complaint in this action alleges that the plaintiffs are former employees of defendant; that, on February 1, 1944, defendant put into effect a certain retirement income plan for its employees; that all contributions were to be made by defendant; that such contributions were to be used to purchase retirement insurance with the Equitable Life Assurance Society of the United States; that said plan was an inducement to the employees to continue in the employ of the defendant; that defendant failed to make the necessary deposits with Equitable for the years 1948 and 1949, thereby depriving plaintiffs of their benefits for said years. Plaintiffs bring suit as a class action seeking, on behalf of themselves and all other employees of defendant, to compel defendant to pay the sums of money necessary to continue in effect the Retirement Plan for the years 1948 and 1949, together with the amounts necessary to purchase retirement income for the years of service prior to the entry into the Plan.

Defendant moves to dismiss the action on the following grounds:

1. The Court is without jurisdiction for the reason that the interest of each of the plaintiffs is less than the jurisdictional amount of $3,000, and this is not a true class action wherein the claims of all the members of the class may be aggregated to reach the jurisdictional amount.

2. The complaint fails to allege facts showing that the plaintiffs are proper representatives of the class which they purport to represent and, on the contrary, they are not such representatives of the class described in the complaint so as to entitle them to maintain this suit.

3. The complaint fails to state a cause of action for the following reasons:

(a) Plaintiffs fail to allege facts necessary to make out an equitable estoppel in their favor and there is, in fact, no basis for an equitable estoppel.

(b) There exists no contract between plaintiffs and defendant upon which to base an action at law; at most, defendant's employee benefit plan constituted an unenforceable gratuity.

(c) Even construing the Plan as a contract between plaintiffs and defendant, plaintiffs are bound by its terms and precluded from maintaining this action.

(d) Even construing the Plan as a contract and refusing to give effect to its express provisions sufficient notice was given plaintiffs by defendant to constitute an effective termination pursuant to the terms thereof.

In disposing of the motion to dismiss, the Court will assume that this is a true class action and will then proceed to consider the question of whether the complaint states a claim upon which relief can be granted. In that regard, an exposition of the Retirement Plan and the defendant's administration of it (as revealed in defendant's affidavits and exhibits submitted in connection with the motion) should be made. In substance, the Plan provided that employees who, on February 1, 1944, had completed two years of continuous service and had attained the age of thirty would become participants under the Plan as of that date, provided that they had not then attained their sixtieth birthday. New employees and employees with less than two years of service would become eligible on the February 1st next preceding their completion of two years continuous service and the attainment of their sixtieth birthday. All contributions to the Plan were to be made by defendant. These contributions were to be paid to Equitable to purchase retirement income for eligible employees according to a formula applied to each employee. The details of this formula are set out in Section 6 of the plan. Briefly, the amount of retirement income purchased for each employee each year was computed on the basis of the employee's monthly average earnings for the preceding calendar year multiplied by a percentage factor determined by his age at the time of his entry into service. A further provision provided for the purchase over a period of years of retirement income based on years of service occurring prior to the adoption of the Plan. When the employee attained the age sixty-five, he would then receive an annuity determined by the amount of contributions that had been made for him. Optional provisions were provided with respect to continuation of payments to beneficiaries designated by the employee and certain death benefits also accrued under certain conditions. Section 10 of the Plan provided that if the service of any employee participating in the plan was terminated prior to the completion of five years of employment, he would receive no benefit under the Plan; it provided that if an employee's service as terminated for any reason after five years of service, but before attainment of age forty-five, he would receive the cash value of all retirement income purchased for him prior to termination of service; it provided that if the employee's service was terminated for any reason after five years of service and attainment of forty-five years, he would receive a paid-up annuity covering all retirement income purchased for him prior to termination of service.

Pursuant to the Plan, defendant entered into a Group Annuity Contract with Equitable to take effect on February 1, 1944. Equitable thereupon issued individual participation certificates to those employees coming under the Plan. Payments were made by defendant to Equitable for all participants on February 1st of the years 1944, 1945, 1946 and 1947. In 1948 defendant purchased the retirement income under the Plan at the end of the year instead of at the beginning and, therefore, the payments for 1948 were made in January of 1949.

Early in 1949 defendant considered a revision of the Plan which would change it to a joint employer-employee contribution plan and increase the retirement benefits provided. (Defendant's exhibits indicate that intermittent notices of the proposed revisions were given to the employees during the ensuing year.) The revised retirement plan, providing greater employee benefits and calling for partial contributions by the

participating employees, was placed into effect, dated back to January 1, 1950. Defendant purchased no annuities under the old Plan for the year beginning February 1, 1949. However, defendant asserts that it continued, and is continuing, to purchase remaining unpurchased annuities for past employee service pursuant to Section 6 of the old Plan.

Pertinent sections of the old Plan provided:

"Section 12. Certificates. The Equitable will issue for delivery to each Participant who is covered under the Plan a certificate of his inclusion under the Group Annuity Contract issued to the Company by the Equitable. Benefits under the Plan will be governed in every respect by the Group Annuity Contract. The only rights or benefits that any Participant may have under the Plan shall consist only of those rights and benefits purchased for him under the Group Annuity Contract. No Participant shall have rights or benefits under the Plan against the Company.

"Section 13. Limitation of Assignment. Unless otherwise provided by law:

"(a) A Participant Annuitant, or Joint Annuitant hereunder shall have no right to assign, transfer, or anticipate his interest in any payments under this Plan, and

"(b) Such payments shall not be subject to any legal process to levy upon or attach the same for payment of any claim against any such Participant, Annuitant, or Joint Annuitant.

"Section 14. Change or Discontinuance of the Plan. In adopting this Retirement Plan for its employees, the Company has made every effort to develop a plan which will best safeguard employees' interests and which will meet future conditions in so far as they can be anticipated at the present time. The Company expects to continue the Plan indefinitely, but necessarily reserves the right to change, amend, or discontinue the Plan should future conditions in the judgment of the Company warrant such action. However, no change or discontinuance for any reason whatsoever can effect the Retirement Annuities pur-chased for employees prior to the date of the change or discontinuance.

"If the Plan is discontinued, the Participant, whether or not he remains in the employ of the Company, will receive at his retirement date the retirement income that has been purchased for him prior to the date of its discontinuance.

"Section 15. General. All of the funds paid by the Company to the Equitable will be used solely to purchase annuities for Participants under the Plan. Any sums refundable by Equitable under the contract because of the termination of Participants' services without vested retirement income will be applied within the year so refundable, or within the next succeeding year, toward the purchase of annuities as herein provided for Participants remaining under the Plan.

"The adoption of this Plan is entirely voluntary on the part of the Company and it shall not be construed as creating a contractual relationship between the Company and an eligible employee, nor shall it be construed as a term of any employment contract, or be interpreted to give the right to any employee to be retained in the service of the Company."

Pertinent authorities compel the conclusion that this type of pension plan, wherein the employer makes all the contributions thereto, constitutes merely an unenforceable gratuity, and does not enjoy the status of a contract. It was so determined in the recent case of Umshler v. Umshler, 1947, 332 Ill.App. 494, 76 N.E.2d 231. There, plaintiff, in a suit for separate maintenance against her husband, sought to sequester certain pension funds alleged to be due him from defendant, Illinois Central Railroad Company, his former employer. The employer had removed his name from the pension rolls. The following were the pertinent provisions of the pension plan in that case:

"* * * That the pension department shall be administered by a board of officers to be known as the board of pensions whose members shall hold office subject to the will of the president; that subject to the approval of the pres-

ident the board shall have power to determine the eligibility of employees to receive pension allowances, to fix the amount of such allowances, and prescribe the conditions under which such allowances may enure; that the actions of the board when approved by the president shall be final and conclusive; that pension allowances authorized pursuant to these regulations shall be paid monthly during the life of the pensioner, provided, however, that the board at its election and in its sole discretion and with or without cause may withhold, suspend, terminate, or permanently discontinue all or any part of any pension allowance; that no assignment of pensions will be permitted or recognized; that neither the action of the directors in establishing a system of pensions nor any other action heretofore, now or hereafter taken by them or by the board in the inauguration, continuation and operation of a pension department or the allowance of any pension shall be construed except as a gratuity from the company subject at its election and in its sole discretion, with or without cause, to be withheld, suspended, terminated or permanently discontinued, or as giving to any officer, agent or employee of the company a right to be retained in its service, or any right of claim to any pension allowance, and the company expressly reserves its right and privilege to discharge at any time any officer, agent or employee without liability for any claim for pension or other allowance than salary or remuneration due and unpaid."

In holding that the railroad could not be required to pay any pension under this plan, the court concluded:

"The uncontroverted evidence shows that the pension plan of defendant railroad company is wholly voluntary. All the benefits are paid out of the corporate treasury. No pension fund is provided, nor were any contributions required of or made by defendant Umshler or any other employee and, so far as the record shows, all the expense of the administration of the plan is borne by defendant railroad company. The application for a pension allowance signed by defendant Umshler recites: 'I understand that any pension allowance granted me * * * is a gratuity which may be discontinued at the pleasure of the company.'

"The language of the application for a pension allowance and the rules and regulations, upon which plaintiff's right of action is based, is plain and unambiguous. In our opinion the benefits provided for in the pension plan of defendant railroad company are clearly gratuities. * * *

"Plaintiff maintains that the more recent cases involving similar pension plans hold that a contract to pay an employee a stipulated pension for life is not a gratuity, citing Schofield v. Zion's Co-op. Mercantile Institute, 85 Utah 281, 39 P.2d 342, 96 A.L.R. 1083. It should be noted that Menke v. Thompson, 8 Cir., 140 F.2d 786, was decided almost a decade after the Schofield case. Moreover, we think the cases sustaining defendant's position are best reasoned and most analogous to the case at bar."

The similarity of the pension plans in the Umshler case and the case at bar should be readily apparent. The Britannica Plan specifically provided that the company reserved the right to change, alter or amend the Plan; that the adoption of the Plan was entirely voluntary on the company's part; that it should not be construed as creating a contractual relationship between the company and any employee; that it should not be interpreted or construed as a term of any employment contract or to give the right to any employee to be retained in service. If the plaintiffs seek to give effect to the Plan, they are correlatively bound to accept all of its express terms, which terms preclude them from maintaining the present action.

For the foregoing reasons, defendant's motion to dismiss the action is granted, and the same is accordingly hereby dismissed.