In the Matter of SOPHIE CURTIN, Appellant and Respondent, against JOHN J. DORMAN, Former Fire Commissioner of the City of New York and Trustee of the Fire Department Pension Fund of the City of New York, et al., Respondents and Appellants.

Argued October 16, 1944; decided November 30, 1944.

*Edward M. Edenbaum* for petitioner-appellant and respondent. I. So much of the order of the Appellate Division as affirms the holding of the Special Term that the termination of petitioner's pension was wrongful is correct, both in law and in fact, and should not be disturbed. In construing section 791 of the Greater New York Charter, the special protection accorded to pensioners by constitutional and statutory provisions requires doubts to be resolved in petitioner's favor. (N. Y. Const. art. V, § 7; *Roddy* v. *Valentine,* 268 N. Y. 228.) II. The facts are adequate to support the finding of both courts below that the petitioner had done nothing to forfeit her pension. This court accordingly lacks power to disturb on this ground the order appealed from. (*Bamman* v. *Erickson,* 288 N. Y. 133; *Matter of Sheridan* v. *McElligott,* 278 N. Y. 59.) III. The ten-year Statute of Limitations (Civ. Prac. Act, § 53) is applicable. Since it had not run, and since explanations of petitioner's delay were given, the order of Special Term allowing recovery of ten years' pension payments was correct and should be reinstated. (*Thoma* v. *City of New York,* 263 N. Y. 402; *Gilbert* v. *Ackerman,* 159 N. Y. 118; *Matter of Malossi* v. *McElligott,* 166 Misc. 513; *Matter of Eichler* v. *McElligott,* 169 Misc. 848; *Hanover Fire Ins. Co.* v. *Morse D. D. & R. Co.,* 270 N. Y. 86; *Hearn 45 St. Corp.* v. *Jano,* 283 N. Y. 139; *Matter of Pierne* v. *Valentine,* 291 N. Y. 333; *Matter of Ramsay* v. *Lantry,* 123 App. Div. 71.)

*Ignatius M. Wilkinson, Corporation Counsel (Morris Shapiro* and *W. Bernard Richland* of counsel), for defendants-respondents and appellants. I. The statute vested discretion in the

Fire Commissioner as sole trustee of the Relief Fund to grant and terminate the allowance to petitioner. In the absence of a showing of fraud or bad faith, neither the Board of Trustees of the Pension Fund nor the court can review the exercise of that discretion. No such showing having been made here, the petition should have been dismissed. (*People ex rel. Bliel* v. *Martin et al.*, 131 N. Y. 196; *Matter of Sheridan* v. *McElligott*, 278 N. Y. 59; *Matter of Friel*, 101 App. Div. 155, 181 N. Y. 558; *Matter of Heffernan* v. *McGoldrick*, 259 App. Div. 671.) II. Even if petitioner had the right to review the determination of the Fire Commissioner in 1933, that right has now been lost by her laches and through the operation of the Statutes of Limitation. (*Schmitt* v. *Merchants Despatch Trans. Co.*, 270 N. Y. 287; *Matter of Williams* v. *Pyrke*, 233 App. Div. 345; *Matter of Mullarkey* v. *O'Ryan*, 91 N. Y. L. J. 1523, 242 App. Div. 615, 265 N. Y. 551; *Matter of Villovic* v. *Valentine*, 250 App. Div. 701, 274 N. Y. 548.)

DESMOND, J. In 1915 petitioner, as the widow of a fireman who died in the performance of duty, was awarded an annual pension by the then Fire Commissioner of New York City. Such a pension was (unlike those now granted, see Administrative Code of the City of New York, § B 19–6.0) a gratuity, the whole cost of which was borne by the City. In March of 1933 defendant Dorman, then Fire Commissioner and trustee of the Fire Department Pension Fund, obtained information, later corroborated by police officers of another city that petitioner had been guilty of misconduct by way of living with a man not her husband, in Los Angeles, California. Dorman thereupon suspended payment of the monthly pension installments and no such installments have been paid to petitioner since March 1, 1933. Section 791 of the Greater New York Charter, as it stood in 1933, provided that such a widow's pension should cease " if she shall have been guilty of conduct which, in the opinion of said trustee, renders further payment inexpedient."

In June, 1933, while petitioner was living in Los Angeles, an attorney representing her interviewed the Fire Commissioner in New York City and was informed of the nature of the accusations against petitioner and that the pension payments had been suspended because of those accusations. Petitioner her-

self returned to New York City in December, 1933. Meanwhile, in November of that year, the Fire Commissioner had made a formal order revoking her allowance. The Commissioner never held any hearing nor did he have before him any proof except the communications from the police officers above referred to. Petitioner swears that she tried, over a period of several years but always without success, to see and talk to the Commissioner about the matter. The chief clerk of the Fire Department Division of Pensions swears that petitioner visited him in December, 1933, and upon inquiry was informed by him of the charges and the " evidence " against her. However that may be, petitioner brought no action or proceeding until the present litigation was commenced by her in August, 1943, more than ten years after she had received her last pension check, and after her attorney had been informed of the reasons for the suspension of payments to her.

In her petition she flatly denies all the charges against her.

The lower courts granted petitioner a peremptory order in the nature of mandamus which vacated the revocation and commanded the Commissioner and other defendants to reinstate the pension. Special Term directed that petitioner be paid her full pension from the first day of April, 1933. The Appellate Division modified the order below so as to provide for pension payments for the six years preceding the institution of the proceeding.

We are of the opinion that section 791, above quoted, of the former Greater New York Charter authorized or required the Commissioner to stop the pension payments, whenever there was a showing to him of misconduct by a petitioner so grave as, in his judgment, to call for such action. Whether or not such a revocation should be ordered was a matter for the Commissioner's discretion and such a discretion when exercised, is not subject to court review. (*Matter of Sheridan* v. *McElligott,* 278 N. Y. 59; *People ex rel. Bliel* v. *Martin et al.,* 131 N. Y. 196.) It may be — and we do not now decide this question — that petitioner had rights which, although not strictly " vested ", were such that she was entitled to an opportunity to appear before the Commissioner and state her side of the case. It may well be that she was in fact denied such an opportunity. But to get any relief in the courts she had to bring her proceeding in due season. (*The People ex rel. Millard* v. *Chapin,* 104 N. Y. 96, 102;

*People ex rel. Staples* v. *Sohmer,* 206 N. Y. 39, 45.) By her own testimony petitioner, after exhausting her efforts to see the Fire Commissioner, waited several years before bringing suit. Section 1286 of the Civil Practice Act prescribing a four-month period of limitations for mandamus proceedings, did not go into effect until 1937 but the courts had for years prior to that, in the absence of a specific statutory limitation, applied to mandamus proceedings, by analogy to certiorari proceedings, that same four-months limitation. (See 3d Annual Report of the Judicial Council [163], [183], "Proposed Simplification of the Remedies of Certiorari, Mandamus and Prohibition", pp. 35 and 55; *People ex rel. Miller* v. *Justices, etc.,* 78 Hun 334; *Matter of McDonald,* 34 App. Div. 512, 514.) The enactment of section 1286 merely put into statutory form, as an expression of legislative policy, what had been the undoubted policy of the courts. In view of that settled policy and of the inordinate, unexcused delay of petitioner and obvious prejudice to the City, we must conclude that petitioner has been, as matter of law, guilty of laches.

The orders should be reversed and the petition dismissed, without costs.

LEHMAN, Ch. J., LOUGHRAN, RIPPEY, LEWIS, CONWAY and THACHER, JJ., concur.

Orders reversed, etc.