William A. Lyman, J.
This is an action "by plaintiffs to recover payments they allege to be entitled to under the terms and provisions of an Employees’ Retirement Plan of defendant, Twentieth Century-Fox Film Corporation (hereinafter called “ Twentieth Century-Fox ”) and certain subsidiaries including defendant Roxy Theatre, Inc., (hereinafter called 11 Roxy ”). The defendants have cross-claimed against the third-party defendants, officers of Local 306, Moving Picture Machine Operators Union (hereinafter called6‘ Local 306 ”).
Plaintiff Samuel Kravitz was employed by Roxy from March 23, 1933 to September 27, 1952. He attained the age of 50 years *369 on April 20, 1951. Plaintiff Solomon Spielfogel was employed by Boxy from September 25, 1931 to September 27, 1952. He attained the age of 50 years on March 22,1951. Plaintiff Isidore Sherman was employed by Boxy from November 22, 1934 to September 27, 1952. He attained the age of 50 years on July 4, 1952. All three plaintiffs were employed as projectionists and at all times were members of Local 306.
In 1946 Twentieth Century-Fox adopted an Employees’ Betirement Plan (hereinafter called “Betirement Plan”), which applied to that company and certain subsidiaries, including Boxy. Under the terms of the Betirement Plan, the plaintiffs herein, who at that time were employed by Boxy, became members thereof.
In September, 1950 Local 306, as the representative of all projectionists employed by Boxy, including the three plaintiffs herein, entered into an agreement with Boxy, the terms of which provided that in lieu of continuing coverage for projectionists under the Twentieth Century-Fox Betirement Plan, 5% of the weekly payroll for projectionists would be paid into an industry-wide pension and welfare fund.
On September 11,1950 Local 306 sent to its members, including the three plaintiffs herein, a notice of a special meeting to be held on September 14, 1950. At this meeting the agreement above mentioned was presented to the membership, was discussed, voted upon and accepted. The minutes of this special meeting of September 14, 1950 were subsequently approved at a regular membership meeting held on September 20,1950.
On February 8, 1955 the agreement entered into in or about September, 1950, between Boxy and Local 306 was reduced to writing. This agreement recited that it was “ made this 8th day of February 1951, as of September 1st, 1949.”
This agreement recited that Local 306 was the “ sole and exclusive representative of the motion picture projectionists employed by ” Boxy. It recited the establishment of the Employees’ Betirement Plan dated January 1, 1946.
Paragraph 3 of this agreement provides as follows:
11 3. The Union agrees for and on behalf of the employees that
“ (a) No employee shall be eligible to become a member of the Plan (Employees’ Betirement Plan) on or after September 1st 1950;
“ (b) No further contribution will be made to the Plan by the Employer on behalf of any Employee who on September 1, 1950 is a member of the Plan;
“ (c) Any such Employee who on September 1, 1950 has not been in the employ of the Employer for fifteen or more consecu *370 tive years and has not attained age 50 shall have no rights and shall be entitled to no benefits under the Plan;
“ (d) The rights and benefits of any such Employee who on September 1, 1950 has been in the employ of the Employer for fifteen or more consecutive years shall be continued, and such Employee upon ceasing to be an employee for any cause other than death or retirement shall be entitled to receive a deferred retirement allowance to commence at age 65, or earlier with the approval of the Employer, which shall consist of an annuity which shall be the actuarial equivalent of the Employee’s service retirement annunity beginning at age 65 computed on the basis of his compensation and credited service up to September 1, 1950 and shall be so based upon and limited by the company’s payments under the Plan allocated prior to September 1, 1950 for his benefit for each prior completed year of membership in the Plan; and
“ (e) The provisions of this paragraph shall not apply to or affect any benefits payable in the case of any such Employee by reason of his retirement, termination of employment, total and permanent disability, or death, prior to September 1, 1950.”
On September 1, 1950 each of the three plaintiffs had been employed as a projectionist for 15 or more consecutive years. On said date, however, none had attained age 50.
On September 27,1952 ownership of the Boxy Theatre passed to National Theatres, Inc. Plaintiffs have been and still are employed at the Boxy Theatre.
Immediately after Twentieth Century-Fox had divested itself of its stock interest in the Boxy Theatre plaintiffs made a demand upon defendants for payments allegedly due under the Betirement Plan. All three plaintiffs were advised that under the terms of the agreement between Boxy and Local 306 they were not entitled to any payments.
This Betirement Plan was created voluntarily by Twentieth Century-Fox. Any benefits conferred thereunder are tantamount to a gift. The donor of a gift has the right to fix the terms and the objects of his bounty. The terms of the Betirement Plan give no vested rights to others than those specifically provided for. Neither on September 1,1949, September 1, 1950, nor on February 8, 1951 had these plaintiffs or either of them come under the provisions of the Betirement Plan so as to entitle them or him to benefits, which he may have lost or been deprived of by the contract of February 8, 1951. Specifically none of the plaintiffs had attained age 50 as provided in paragraph 3, subdivision (d), of the Betirement Plan, although each had been employed 15 or more consecutive years. The most that may *371 be said for plaintiffs is that each enjoyed an inchoate gift. This never ripened into a vested one. The Retirement Plan was terminated and the plaintiffs came under the provisions of another industry-wide pension plan. Under the terms of this new plan their years of employment were credited to them.
Plaintiffs argue that neither Twentieth Century-Fox and/or its subsidiaries nor Local 306 ‘1 had the right or authority to modify, change or alter the terms, conditions, covenants, rights and benefits of each of the plaintiffs under the Retirement Plan ” and that none of the plaintiffs consented to be bound by the terms of the agreement of February 8, 1951. This is directly contrary to the terms of the Retirement Plan, to wit, section 11, which specifically and plainly allows for amendment or modification. Moreover, subdivisions la and 3 of section 4 of the Retirement Plan indicate plainly who shall become beneficiaries under the plan. It seems clear that the scheme of the Retirement Plan is simply a promise on the part of defendants to give to specifically described and qualified employees a certain sum in the future with a reservation that it may at any time determine not to complete the gift. If, as here, the employer so determines, no employee has any right to recover any sum (McNevin v. Solvay Process Co., 32 App. Div. 610, 612, 613).
In the instant case, it is noteworthy that the plaintiffs made no contribution to the Retirement Plan. The following language employed by the court in MacCabe v. Consolidated Edison Co. (30 N. Y. S. 2d 445,447) is peculiarly apt: ‘ ‘ That this retirement Plan, which became effective in 1936, was adopted by the defendant in recognition of some obligation to its employees is hardly open to doubt in the light of contemporary progress in labor relations, but where, as here, the retirement Plan is not included in a contract between the employer and employee, the courts are without choice but to hold that the benefits therein described are entirely voluntary and gratuitous on the part of the employer.”
On February 8, 1951 the Retirement Plan was amended by Twentieth Century-Fox, as was its right, so as to include a new subsection (6), which reads as follows: “ A person who is a member of a labor union with which the Corporation has made an agreement which requires the Corporation to make payments to the union or to another pension fund or trust or to an insurance company for the purpose of providing a pension for such person shall not be deemed an employee from and after the date when such liability to make such payments first commences to accrue.”
*372 Under the provisions of the Retirement Plan and the agreement of February 8,1951, plaintiffs have no claim against these defendants.
The question of the liability of the third-party defendant poses no problem. The law is well settled that employees who designate a labor union as their representative for collective bargaining purposes are bound by all the acts of that organization taken after proper voting and the individual employee is not free to accept such decisions and acts as please him and to reject all others. (See Matter of New York Times Co. [Newspaper Guild], 2 A D 2d 31.)
The said agreement of February 8, 1951 between Twentieth Century-Fox and Local 306 recited that the union was the sole and exclusive representative of the Roxy projectionists including these plaintiffs and that a special and a regular meeting of the union was held and the matters of pension funds in the Retirement Plan and the new plan under the agreement of February 8, 1951 was fully discussed and voted upon and approved by the membership. These plaintiffs therefore are bound by the decision of the acts of Local 306 and cannot be heard to complain against them even if individually they would not approve.
The complaint against the defendants should be accordingly dismissed and the third-party complaint against the third-party defendants should also be dismissed.
The above constitutes the decision of the court as provided in section 440 of the Civil Practice Act. Settle judgment.