Norman SIEGEL

v.

The FIRST PENNSYLVANIA BANKING AND TRUST COMPANY, Trustee under Food Fair Stores, Inc. Incentive Bonus & Retirement Plan,

and

Food Fair Stores, Inc.

Civ. A. No. 29583.

United States District Court
E. D. Pennsylvania.

Dec. 21, 1961.

Robert D. Abrahams, of Abrahams & Loewenstein, Philadelphia, Pa., argued the case for plaintiff.

Walter I. Summerfield, Jr., of Shapiro, Rosenfeld, Stalberg & Cook, Philadelphia, Pa., argued the case for defendants.

JOSEPH S. LORD, III, District Judge.

■ This is an action by plaintiff against his former employer, Food Fair Stores, Inc. (Company) and against the Trustee of Company's Incentive Bonus & Retirement Plan (Plan) to establish his rights in the Plan and for judgment in that amount. Defendants, asserting that the complaint fails to state a claim upon which relief can be granted, have moved to dismiss under Fed.Rules Civ.Proc. 12 (b) (6), 28 U.S.C.A., and have filed affidavits alleging certain facts *dehors* the pleadings. Where matters outside the pleadings are presented to the court, the motion becomes one for summary judgment under F.R.Civ.P. 56 (6 Moore's Federal Practice § 56.08, p. 2048), and we so treat this motion.

■ This Plan is a non-contributory profit-sharing plan voluntarily established by the Company for the benefit of its executive officers and certain other salaried employes. Under the Plan the Company has agreed to pay to a fund a certain percentage of its profits annually so long as the Plan remains in effect. This fund is held by a trustee and administered by an Advisory Committee consisting of five members, three appointed by the Company and two by participating employes. The fund is invested through the purchase of annuities, the purchase of insurance contracts on the lives of the employes and in other investments. The em-

ploye's beneficial holdings are typically paid to him at his retirement, or to his beneficiary if death occurs prior to retirement. The Plan does, however, provide (II, 6):

> "The interest of each participant shall become vested in him after ten (10) years of participation in the Plan, including as part of the ten (10) years the sixty (60) month period or eligibility for admission to the Plan; and shall be paid over to him or for his account at the times and in the manner stipulated herein."

The Plan further provides that the Committee has the right to terminate the interest of any beneficiary under the Plan upon a finding that he has, among other things, participated in any fraud or dishonesty toward the Company, or has "intentionally done any other act materially inimical to the interests of the Company."

It is under this last quoted section that the dispute here arises. Plaintiff having been employed by the Company for fourteen years, resigned and took employment in a similar line of business. The Committee found that plaintiff's employment was in competition with the Company; that this was "materially inimical to the interests of the Company"; and that plaintiff's rights under the Plan were forfeited.

To protect his interests in the annuity contracts purchased for him, plaintiff was allowed to purchase these from the Trustee, giving his obligation for their cash values. Plaintiff now alleges that the action of the Committee was improper. He seeks the cancellation of his indebtedness and a judgment for the amount of his interest in the fund.

Defendants' main contentions are: (1) the pension plan does not establish a contract upon which the plaintiff may base his cause of action; (2) under the terms of the Plan, assuming it establishes a contract, plaintiff has no standing in court to question the Committee's determination, since the Plan provides that all decisions of the Committee shall be final and conclusive; (3) the plaintiff's action is barred by a specific provision in the Plan whereby a participant agrees not to subject the Company, Committee or Trustee to any suit, and releases them from liability.

*Contract or Gratuity*

Defendants urge that we view the pension plan as a gratuity which Company voluntarily grants to its employes, and not, as contended by plaintiff, as a contract enforceable according to its terms. From a consideration of present day labor relations, we think it is a fair generalization to say that most pension plans involve at least offers of contractual obligations by employers in attempts to obtain decreased labor turnover, and, to quote from the Plan in question, to obtain "a finer esprit de corps and a greater interest in and loyalty to the Company." We, of course, recognize that a plan might be set up or worded in such a manner so as to exclude any construction other than that of a gratuity, or to require the conclusion that an employe has no rights until he has cash in hand.[1]

Analyzing the Plan here in question, the most that can be said for defendants' position is that the Plan partakes somewhat of both views. The Company has

---

1. See, for example, Fickling v. Pollard, 1935, 51 Ga.App. 54, 179 S.E. 582, wherein the plan provided that "The company expressly reserves the right to deny pension allowance to any employee, and to suspend, terminate, or permanently discontinue any allowance already made": Umshler v. Umshler, 1947, 332 Ill.App. 494, 76 N.E.2d 231, where the employe acknowledged in his pension application that any allowance granted "is a gratuity which may be discontinued at the pleasure of the company", and the plan provided that the board at its sole discretion and with or without cause may withhold, suspend, terminate, or permanently discontinue all or any part of any pension allowance. See also McNevin v. Solvay Process Co., 1898, 32 App.Div. 610, 53 N.Y.S. 98; Dolge v. Dolge, 1902, 70 App.Div. 517, 75 N.Y.S. 386; Burgess v. First Nat. Bank, 1927, 219 App.Div. 361, 220 N.Y.S. 134.

promised to pay a certain amount annually to the Trustee. Thereafter, the fund thus accumulated is to be held for the benefit of its employes under terms specified in the Plan. If the suit before us were one to force the Company to make the promised payments to the fund, the Company might well point to Article I, 2, of the Plan and say that no obligation exists which is enforceable against it. This section provides in part:

"* * * However, the Company shall be under no obligation or liability whatsoever to continue to make division of profits or to make payments to the trust fund, and nothing contained in the Plan or in the Trust Agreement shall be construed as giving rise to any implication or presumption that the directors shall be required to allocate any portion of the Company's profits for distribution to the participants hereunder."

This issue we need not decide. We are involved only with the question of rights in amounts that have already been turned over to the Trustee, and as to these amounts we cannot realistically view the Plan as a gratuity. The Company has divested itself of the money paid to the Trustee and has clearly specified that none of the funds can return to it.[2] Although the Committee must direct the payment of any benefits, specific standards of eligibility are set forth. At the least, we view the Plan as a unilateral offer by the Company to its employes of an interest in the *fund*, such offer to be accepted by performance, i. e., employment for the requisite period. The realities of the Internal Revenue Code, that is, the tax benefits the Company has obtained in deducting its payments under the Plan, and the vesting requirements of the Code,[3] lend further support to our conclu-

sion that this pension plan is a contract rather than a gratuity.

The above discussion is sufficient to distinguish Hughes v. Encyclopaedia Britannica, 1954, 1 Ill.App.2d 514, 117 N.E.2d 880, cited by defendants as establishing the proposition that the Plan does not constitute a contract. The object of the suit in Hughes was to force the employer to purchase annuity contracts promised in its plan. The court, although holding there was no contractual obligation on the part of the company, did state that:

"* * * In a proper case plaintiffs as third party donee beneficiaries could enforce the contract against the [insurance company] in the event that it refused to pay annuities which had been purchased for the employees by the defendant." 117 N.E.2d at 881.

Similarly, in the instant case, plaintiff can enforce his rights in amounts already paid to the Trustee. See also Hughes v. Encyclopaedia Britannica, D.C.N.D.Ill., 1952, 108 F.Supp. 303 (judgment vacated on other grounds, 7 Cir., 1952, 199 F.2d 295); Cowles v. Morris & Co., 1928, 330 Ill. 11, 161 N.E. 150.

Defendants have cited cases holding that no contract existed where the employe had not fulfilled the necessary service requirements of the Plan or had left employment prior to retirement. These cases are clearly distinguishable. Where a specific requirement of eligibility for benefits has not been complied with, obviously there is no contract for the employe to enforce. This, however, is for the reason that there has been no acceptance of the offer; not because there has been no offer of a contract. Despite the "no contract" language found in these cases, the courts have not stated that un-

---

**2.** VI, 4: "This Plan may be amended at any time by the Committee with the approval of the Company, provided said amendment shall not, except as to employees of the Company who have resigned or who have been discharged, abridge or impair any rights of any beneficiary which have accrued at the time of such amendment, or *entitle the Company to receive any part of the assets, earnings, increments or direct benefits from the Plan.*" (Emphasis added.)

**3.** 26 U.S.C.A. § 401; I.R. Ruling 57-163 (b) (2).

668

der no circumstances would the plans constitute enforceable contracts. Rather, they reviewed the provisions of the plans and found that for one reason or another, there had been no fulfillment of some particular provision of the plan, or that the denial of benefits had not been arbitrary. See Menke v. Thompson, 8 Cir., 1944, 140 F.2d 786; Magnolia Petroleum Co. v. Butler, Tex.Civ.App., 1935, 86 S.W. 2d 258; In re Missouri Pac. R. Co., D.C. E.D.Mo., 1943, 49 F.Supp. 405; Kravitz v. Twentieth Century-Fox Film Corp., 1957, 5 Misc.2d 368, 160 N.Y.S.2d 716.

We do not stand alone in holding that a pension plan constitutes a contract: Schofield v. Zion's Co-op. Mercantile Institution, 1934, 85 Utah 281, 39 P.2d 342, 96 A.L.R. 1083; Cantor v. Berkshire Life Ins. Co., 1960, 171 Ohio St. 405, 171 N.E. 2d 518; Psutka v. Michigan Alkali Co., 1936, 274 Mich. 318, 264 N.W. 385; Wilson v. Rudolph Wurlitzer Co., 1934, 48 Ohio App. 450, 194 N.E. 441; David v. Veitscher Magnesitwerke Actien Gesellschaft, 1944, 348 Pa. 335, 35 A.2d 346.

The defendants, to distinguish those cases in which a contract was found to exist, have characterized them in their brief as "cases in which the employee had served to retirement age, thus making it relatively easy for the court to determine that the employe had, by staying on the job till retirement, given consideration for the contractual obligation to pay him a pension." But it is obvious that the present case is different only in degree and not in kind. In the Company's Plan there is no necessity for the employe to stay on the job until retirement. Article II, 6A, provides that an employe shall have a right to receive his share in the Plan upon resignation or discharge after

completion of ten years of participation in the Plan.[4]

Defendants urge that we draw a distinction between union negotiated or governmental plans on the one hand, and plans of private employers voluntarily and gratuitously instituted on the other, the latter to be considered as gratuities. That a plan may be gratuitously instituted by an employer for whatever reasons it deems appropriate does not require the conclusion that it is the offer of a gratuity. The motivation for the offer and the terms under which it may be accepted may differ, depending on whether the offer is made voluntarily or as a result of union pressure. It is reasonable to assume that a union negotiated pension plan will be less hedged with restrictions than one voluntarily instituted. But when, as here, an offer of a contract has been made and accepted, the contract exists regardless of the reason why the offer was made.

*Review of Committee Determinations*

Having decided that the Plan does involve a contract under which the plaintiff claims to be entitled to benefits, we come next to the extent of review available to an employe allegedly aggrieved by a decision of the Committee. Under the terms of the Plan, Article II, 1, the Committee has the duty to administer the plan and

"* * * All decisions of the Committee as to the facts of any case and the meaning or intent of any of the provisions of the Plan, or of any rules or regulations and their application to any case, shall be final and conclusive."

Article VI, 8 provides further that:

"None of the beneficiaries under the Plan shall have any right, title,

4. "Upon the resignation or discharge of any beneficiary from employment by the Company after his having completed said ten (10) years of eligibility and participation in the plan, and before any annuity contract, insurance or other investment (which has a maturity date) shall have matured, the Committee shall direct the Trustee to make the cash surrender value of each annuity contract or insurance or other investment (which has a cash surrender value) and/or investment not having a cash surrender value (or the proceeds or equivalent of the proceeds of such investment) available to such beneficiary in the same manner as hereinbefore provided for the proceeds of contracts which have matured."

interest, property claim or demand in, against or to the assets held by Trustee unless and until it has been duly resolved by the Committee that payment or distribution of any such assets shall be made to any beneficiary."

The Company urges that the effect of the quoted sections is to bar review of the Committee's action. The cases do not support the view that such provisions must be construed as giving unlimited discretion to those administering employe benefit plans. See cases cited at 42 A.L.R.2d 474. This is not to say a court will substitute its judgment for that of the administrator, but such judgment cannot stand if the employe shows fraud or bad faith. See Forrish v. Kennedy, 1954, 377 Pa. 370, 105 A.2d 67, holding that a court will compel a trustee of a benefit plan to exercise his discretion in good faith and within bounds of reasonable judgment. The standard has also been stated in Menke v. Thompson, supra, 140 F.2d at 791:

> " * * * The decision of the Board of Pensions denying Menke's claim for a pension is therefore conclusive, to use the words of this court in Guild v. Andrews, 8 Cir., 137 F. 369, 371, 'in the absence of fraud or such gross mistakes as imply bad faith or a failure to exercise an honest judgment.' The burden of showing such fraud, bad faith, or mistake was upon the appellant here, and, to sustain such a showing, the evidence 'must be more than a mere preponderance, it must be overwhelming.' * * *"

Hurd v. Illinois Bell Telephone Company, D.C.N.D.Ill.1955, 136 F.Supp. 125, sets forth the rationale for judicial review in spite of a contractual provision which in clear language excludes review:

> " * * * While there are significant exceptions, courts generally do not look favorably upon provisions that give to one party to a contract the power to settle for itself any disputes arising under the agreement.

> " 'The judicial mind is so strongly against the propriety of allowing one of the parties, or its especial representative, to be judge or arbitrator in its own case, that even a strained interpretation will be resorted to if necessary to avoid that result.' Railway Passenger & Freight Conductors' Mutual Aid & Benefit Association v. Robinson, 1893, 147 Ill. 138, 159–160, 35 N.E. 168, 176. * * *" (136 F.Supp. 154–155)

Defendants cite McCabe v. Consolidated Edison Co., 1941, City Ct.N.Y., 30 N.Y.S.2d 445, and Curtin v. Dorman, 1944, 293 N.Y. 505, 58 N.E.2d 515, both of which denied review of the administrative decision. Both, however, were predicated on a holding that the plan was a mere gratuity and gave no contractual rights. Where, as here, contractual rights are involved one party may not arbitrarily deny the rights of the other and thereafter be subject to no judicial sanctions.

*Effect of the "No-suit Release" Clause*

The "release" clause upon which defendants rely is Article VI, 7, of the Plan:

> "It is the express intention and declaration of each officer and employee who becomes a beneficiary hereunder that he becomes such a beneficiary subject to all conditions and provisions of the Plan and further that such officer and employee shall not subject the Company and/or the Committee and/or the individual Advisors and/or the Trustee to any suit or litigation or any legal liability for any reason or cause or thing whatsoever in connection with this Plan; each such officer and employee, for himself, his heirs, executors and administrators does hereby release the Company and the Committee and the Trustee from any and all such liability and obligation."

Defendants contend that if, by his acts, plaintiff accepted the terms of the Plan and thereby created a contractual relationship between himself and the Com-

pany, he accepted all the terms of the contract, including the "no-suit release" clause. The release, say defendants, is just as binding on the plaintiff as any of the other clauses and must be enforced. Our view of the "no-suit release" clause makes it unnecessary to rule on defendants' contention that there is no public policy against enforcement of a release of future liability or on plaintiff's contention that there is.

Were we to adopt defendants' construction and application of Article VI, 7, we would, in effect, set at naught our conclusion that the Plan is a contract and not a gratuity. To hold (as we do) that plaintiff has contractual rights but has no means of enforcing them would not only be inconsistent, but futile. A right without remedy is no right at all: cf. Woods v. Interstate Realty Co., 1949, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524. To say with one breath that the Plan is a contract, and with the next to say that one of the parties may not enforce it, is, we feel, a contradiction in terms.

The Company certainly intended to give benefits under the Plan and to vest certain rights in the participants. Whether there would have been any vesting provisions in the absence of such a requirement in the Internal Revenue Code is an interesting speculation. The fact is, however, that the Plan specifically provides that after ten years each participant's interest is vested. If this provision is not to be purely illusory, a remedy must exist to give it meaning. The participant must have the right to enforce the vested interest granted to him; otherwise, it has not been granted. We hold, therefore, that the "no-suit release" clause does not bar an action by a participant to enforce his rights in the trust *res*.

Releases of future liability have been upheld, e. g., Manius v. Housing Authority of City of Pittsburgh, 1944, 350 Pa. 512, 39 A.2d 614, which holds that a tenant may release a landlord for liability for negligence. This does not mean, however, that the tenant cannot sue, for example, to enforce a right to obtain possession. Similarly, if the plaintiff alleged that he was fraudulently denied benefits and sued the members of the Committee personally for the damages sustained, or if a participant sued the Trustee for improper handling of the trust assets, the members of the Committee or the Trustee might then plead the release and agreement not to sue as a bar to recovery, relying on the principle of the Manius Case. In the landlord-tenant cases, the release by the tenant of any right to obtain possession of the property would render the lease a nullity. So here, without the construction we have placed on Article VI, 7, the vesting provisions of the Plan are a nullity and the benefits granted illusory. Without a right of action a participant has contracted to receive nothing if such is the whim of the Advisory Board.

*Conclusion*

█ We conclude that defendants' motion to dismiss must be denied. Defendants' evidence in support of their motion alleged that the Committee had investigated plaintiff's case and found that his going into competition with the Company was materially inimical to the interests of the Company. Plaintiff's counter-affidavit denies that his acts were materially inimical to the interests of the Company and alleges that the action denying him benefits was arbitrary and capricious and without reasonable basis. Certainly there is an issue of fact involved.[5] Plaintiff has the right to show that the facts surrounding his resignation and the new job were such that the Committee's findings were without reasonable basis.

Defendants have also alleged that plaintiff settled and waived his claim on being allowed to purchase certain annuities at their cash value. Plaintiff denies that he settled the claim and suffice it to say that as to this issue defendants stated no facts in their affidavit for plaintiff to controvert in order to avoid dismissal of his action.

The motion to dismiss, treated as a motion for summary judgment, is denied.

5. As we have said, this motion must now be considered under F.R.Civ.P. 56.