Anthony J. GENEVESE et al.,

v.

MARTIN–MARIETTA CORPORATION,
Dragon Cement Company Division,
Northampton, Pennsylvania.

Civ. A. No. 41249.

United States District Court,
E. D. Pennsylvania.

Dec. 18, 1969.

49. Artmoore Co. v. Dayless Mfg. Co., 208 F.2d 1 (7th Cir. 1953), cert. denied 347 U.S. 920, 74 S.Ct. 518, 98 L.Ed. 1075 (1954).

Bernard N. Katz, of Meranze, Katz, Spear & Bielitsky, Philadelphia, Pa., for plaintiffs.

McFadden, Riskin & Huston, Bethlehem, Pa., Edward H. Feege, of Fackenthal, Teel & Stettz, Easton, Pa., for defendants.

## OPINION AND ORDER

BODY, District Judge.

Plaintiffs seek the return of their respective cash contributions[1] made to a contributory pension plan dated December 18, 1963 and promulgated by the defendant, their employer. The relevant facts appear in a stipulation filed by

counsel on November 3, 1969 and made a part of the official record of this case. Briefly summarized, they are as follows:

Sometime prior to August 1, 1965, the plaintiffs became "salaried employees" of the defendant, some of them working at its Northampton, Pennsylvania, plant and the others at its plant in Thomaston, Maine. As salaried employees, they voluntarily participated in a contributory pension plan dated December 18, 1963, which the defendant promulgated. The 1963 plan was subsequently amended and superseded as of August 1, 1965 by a non-contributory plan covering all salaried employees.

During the period from September 27, 1965 to February 10, 1966, various Locals of the United Cement, Lime and Gypsum Workers International Union were certified as the collective bargaining agents for plaintiffs. Contract negotiations followed between the union and the defendant-employer, culminating in a series of agreements concluded between August 9, 1966 and December 11, 1967. Pursuant to the terms of these agreements, the plaintiffs were reclassified as "hourly employees" and thus became ineligible for benefits under the 1965 plan. They were, however, immediately included in the defendant's pension plan covering bargaining unit employees.

On January 17, 1968, in the proper exercise of its authority under the 1965 plan, the Administrative Committee transferred all contributions made by the plaintiffs under the 1963 plan, together with interest to December 31, 1967, to the bargaining unit pension plan.

Since a stipulation of facts has been filed, the parties have made individual motions for summary judgment under Fed.R.Civ.P. 56 and have asked the Court to consider the case on that basis. We have agreed to do so.

[1]. The contributions of all the plaintiffs total approximately $14,000, exclusive of interest; individually the contributions vary in amount from a low of approximately $150 to a high of nearly $2000.

The issue presented for determination is whether, under the facts of this case, the defendant was free to adopt a non-contributory pension plan, effective August 1, 1965, which eliminated the right of participants under Section 10(e) of the 1963 plan to recover their respective contributions made under the latter plan in the event they ceased to be classified as salaried employees.

Section 10(e) of the 1963 plan reads as follows:

"If a participant ceases to be classified by the Company as a Salaried Employee the employment of such Participant with the Company shall, for the purposes of the Plan, be deemed to have terminated, and he may elect either to be paid the amount specified in paragraph (a) of this Section 10 [2] or to receive payments of Retirement Income commencing at age sixty-five as specified in Paragraph (b) of this Section 10 if he has been a Participant hereunder for at least ten years at the time he ceases to be classified as a Salaried Employee." (Footnote added)

Section 15 of the 1963 plan describes the right retained by the defendant to amend the plan. It provides in part:

"* * * The Company shall have the right at any time and from time to time, by an instrument in writing duly executed and acknowledged to modify, alter, or amend the plan in whole or in part; provided * * * that no such amendment shall vest the Company with any right, title or interest in or to the assets held under the Plan or divest a Participant of any credits or values previously accrued for his benefit, or allow any part of the assets held under the Plan to be used or diverted for any purpose other than for the exclusive benefit of Participants * * *."

It is apparent, therefore, that although plaintiffs had the right under the 1963 plan to elect a refund of their respective cash contributions in the event they ceased to be classified as salaried employees, the defendant nevertheless retained the right to amend the plan in accordance with the provisions of Section 15. Consequently, it must be decided whether Section 15 permitted the elimination of Section 10(e) by amendment.

■■ Plaintiffs do not contend, nor is it arguable, that the elimination of Section 10(e) vested the company with any right, title or interest in the assets held under the plan. Plaintiffs do contend, however, that the elimination of Section 10(e) worked a divestment of "credits or values" previously accrued for their respective benefits. A reading of the 1963 plan discloses that sums contributed by participants are consistently referred to as "contributions".[3] On the other hand, the phrase "credits or values" seems more appropriately to refer to actuarial benefits accrued on paper as of some point in time, and concerning which the duty of immediate performance would arise only upon such a future contingency as the retirement, disability or death of a participant.[4] The Court's conclusion with respect to this construction is supported by the fact that neither the plaintiffs' brief nor the Court's research has uncovered a case construing a similar pension plan provision in accordance with plaintiffs' present contention. Moreover, the 1963 plan provides in Section 26 that it shall be construed in accordance with the law of Illinois. The courts of that state have repeatedly held that the rights of participants under a private pension

---

2. Paragraph (a) of Section 10 includes, among other items comprising the amount there specified, a participant's own contributions to the plan, together with interest.

3. See in the 1963 plan Sections 2 (*Interest*); 5(a); 7(a), (b), (e) (1), (f); 8 (a), (g) (1); 9(b); 10(a) (1), (a) (2), (a) (3), (d), (f); 11(b); 12(b); 16(e) (1); 18(a).

4. See in the 1963 plan Sections 6(a); 7(e) (1); 8(a) (2), (b), (h); 9(c); 10(a) (2), (d); 16(d), (e) (1), (e) (2); 18 (b).

plan are governed by the terms of the plan. Smith v. Union Carbide Corp., 350 F.2d 258 (6th Cir. 1965); Hurd v. Illinois Bell Telephone Company, 136 F. Supp. 125 (N.D.Ill.), aff'd 234 F.2d 942 (7th Cir. 1965); Cowles v. Morris & Co., 330 Ill. 11, 161 N.E. 150 (1928); Anderson v. Seaton, 14 Ill.App.2d 53, 143 N.E.2d 59 (1957). It is therefore clear that the terms of the 1963 plan control, and the elimination of Section 10(e) therefrom by means of amendment did not violate the Section 15 prohibition against divesting a participant of any credits or values previously accrued for his benefit.

The plaintiffs also argue that the elimination of Section 10(e) from the 1963 plan resulted in a portion of the assets held thereunder being used or diverted for some purpose other than for the exclusive benefit of participants. They point out that sometime between August 9, 1966 and December 11, 1967 the plaintiffs received a guarantee of benefits in accordance with the benefit level of the bargaining unit plan and were thereafter in no way dependent upon the actuarial state of that fund. They contend, therefore, that the transfer to the bargaining unit plan of plaintiffs' contributions made under the 1963 plan resulted in no benefit to the plaintiffs. Rather, they argue that it resulted in a cost savings for the defendant since the funding level of the bargaining unit plan was increased.

As a general matter, it is difficult to see how the assets held under the 1963 plan could be used for the benefit of participants without indirectly benefitting the defendant at the same time. Even if the assets were only used to make the employees happier and more content in their work, the defendant would be benefitted to the extent of having a more stable and satisfied work force. Consequently, as long as the assets were used primarily for the benefit of participants, it cannot be said that Section 15 was violated if the defendant also received an indirect benefit.

By eliminating Section 10(e) from the plan, the defendant merely caused the contributions made by a participant to be unavailable for refund in the event he ceased to be classified as a salaried employee. The funds represented by these contributions continued to remain in the plan and to be identified as part of the funding for each participant's individual benefits. For as long as the participant remained a salaried employee and the superseding plan of August 1, 1965 continued in effect, the contributions of each participant stood ready to provide him with actual pension payments, should he become eligible for them. At no time during this interval did any benefit, monetary or otherwise, accrue to the defendant. Later, when the contributions were transferred from the 1965 plan to the bargaining unit plan, they were commingled, and no individual allocations were made. However, since the prohibition presently in question effectively mandated the use of pension assets for the exclusive benefit of participants, it was not violated by the defendant's failure, under the bargaining unit plan, to allocate the individual contributions to their respective contributors. The use of the commingled contributions for the collective benefit of all participants was permissible under Section 15.

Moreover, it is to be noted that the assets were at all times used primarily for the benefit of participants, whether individual or collective, and therefore any incidental benefit which may have accrued to the defendant in the form of a cost savings did not constitute a violation of Section 15.

Concluding as it does that Section 15 empowered the defendant to amend the 1963 plan so as to eliminate Section 10(e) therefrom, the Court is now confronted with the question whether the plaintiffs had any vested rights which were infringed by the adoption of the 1965 plan. To answer that question we must first determine the nature of the legal relationship which existed between

the plaintiff participants and the defendant company.

■■ Where the terms of a private pension plan specifically negate a contractual relationship between the employer-promulgator and the employee-participants, and the parties' course of conduct is consistent therewith, a gratuity and not a contract is created. Menke v. Thompson, 140 F.2d 786 (8th Cir. 1944); Siegel v. First Pennsylvania Banking and Trust Co., 201 F.Supp. 664, 666 (E.D.Pa.1961); Hughes v. Encyclopedia Britannica, 1 Ill.App.2d 514, 117 N.E.2d 880 (1954); Umshler v. Umshler, 332 Ill.App. 494, 76 N.E.2d 231 (1947). On the other hand, where the performance of one or more acts by the employee-participants is sought by the employer as consideration for its promise to pay in accordance with a schedule of benefits, a unilateral contract arises upon the completion of performance by the participants. Hurd v. Illinois Bell Telephone Company, 234 F.2d 942 (7th Cir. 1956); Siegel, supra, 201 F.Supp. at 667; Schofield v. Zion's Co-op Mercantile Institution, 85 Utah 281, 39 P.2d 342, 96 A.L.R. 1083 (1934). Finally, it would seem that, were the parties to bargain for and receive mutual promises, a bilateral contract would arise between the promulgator and the participants.

■ From a careful consideration of the facts of this case, the Court is of the opinion that the promulgation of the 1963 pension plan constituted an offer by the defendant for a unilateral contract. The Court of Appeals for the Seventh Circuit described the way in which the adoption of a pension plan created an offer for a unilateral contract in *Hurd,* and we think that analysis applicable to the case at bar.[5] The court there said:

"The pension plan is a unilateral contract which creates a vested right in those employees who accept the offer it contains by continuing in employment for the requisite number of years. * * * Such an employee received only a right to receive a monthly pension, not in a specified amount, but in an amount computed in accord with the provisions and conditions of the whole contract. * * * the 1952 amendment represents two separate contracts in one, closing the group who had accepted prior to 1952, and opening a new group composed of the then active employees who ultimately might qualify thereafter." 234 F.2d at 946, 947.

Here it seems obvious from the facts that the defendant's purpose in adopting the 1963 plan was "to obtain decreased labor turnover, * * * 'a finer esprit de corps and a greater interest in and loyalty to the Company.'" *Siegel,* supra, 201 F.Supp. at 666. Moreover, it is clear that what the defendant sought in return for its promise to pay was the performance of certain acts by employee-participants and not a promise to perform. These acts included continuing in the defendant's employ for a specified period of time, contributing certain sums of money to the pension fund and attaining a specified age. Further, the Court holds that it is an unimportant distinction that the 1963 pension plan in the present case was a contributory one, whereas the plan involved in *Hurd* was a noncontributory one. The contributory nature of the present plan merely results in the requirement that participants perform an additional act before a unilateral contract can arise.

■ Before a binding unilateral contract can arise, however, the offeree must perform all acts designated by his offeror as consideration for the latter's promise. Upon such performance all rights become settled. So here there could be no binding contract until the

---

5. The Appellate Court of Illinois made the following comment concerning *Hurd*:
   "Though the (Court of Appeals) decision in the *Hurd* case is not binding upon us (Lewis v. Braun, 356 Ill. 467, 191 N.E. 56), we are persuaded by the reasoning therein."
   Anderson v. Seaton, 14 Ill.App.2d 53, 143 N.E.2d 59, 62 (1957).

employee-participants had completed all three acts constituting the consideration for defendant's promise to pay. Since plaintiffs had not met either the age or service requirements at the time the 1965 plan became effective, no contract then existed and the rights of the parties were therefore not firmed up.

Had the rights been firmed up at that time, the adoption of the 1965 plan would have been ineffective to vary any one of them, including plaintiffs' right to a refund of their respective contributions upon subsequent reclassification.[6]

The fact that a contract did not exist at the time the 1965 plan became effective is not dispositive of the vested rights question. The defendant represented in Section 10(e) of its 1963 plan that if a participant ceased to be classified as a salaried employee, the latter could elect to receive a refund of the contributions he had made under the plan. The only fair construction of that representation is that it was meant to apply to reclassifications occurring both before the participant became eligible for pension payments, and while the representation itself continued to constitute a term of the plan. Consequently, if the plaintiffs had been reclassified before August 1, 1965, they would have had a vested right to the refund of their contributions despite their failure to complete all the acts necessary to the creation of a unilateral contract. Since, however, plaintiffs were not reclassified until after the 1965 plan had been in effect for a substantial period of time, no such vested right arose.

Accordingly, the Court enters the following:

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties and over the subject matter.

2. Section 15 of the 1963 pension plan permitted the defendant to amend that plan in such a way as to eliminate Section 10(e) therefrom;

3. The plaintiffs had no vested rights which were infringed by the defendant's adoption of its 1965 pension plan;

4. The plaintiffs are not entitled to the return of their respective contributions made under the 1963 pension plan.

5. Judgment is entered in favor of the defendant and against the plaintiffs.

---

6. This case does not fall within the rule announced by the District Court in *Hurd*, supra, 136 F.Supp at 145, 148, that an employer is permitted to adjust pension benefits, after an employee's retirement, in accordance with fixed and reasonable standards contained in the plan. Defendant's power of amendment as described in Section 15 of the present plan cannot be compared with the formula for the adjustment of pension benefits involved in *Hurd*.