Valentino BIANCHIN et al.

v.

McGRAW–EDISON COMPANY, a corporation, and Trustees of the McGraw-Edison Company Profit-Sharing Trust.

Civ. A. No. 75–81.

United States District Court,
W. D. Pennsylvania.

Sept. 30, 1976.

Wray Zelt, III, Washington, Pa., for Valentino Bianchin, et al.

Eric P. Reif, Pittsburgh, Pa., for McGraw-Edison Co.

C. Arthur Wilson, Jr., Pittsburgh, Pa., Wilbur H. Boies, Chicago, Ill., for Trustees of McGraw-Edison Co. Profit-Sharing Trust.

Allan Gunn, Chicago, Ill., for McGraw-Edison Co.

MEMORANDUM

SORG, District Judge.

In this action plaintiff-employees of the McGraw-Edison Company seek distribution of their interests under the McGraw-Edison Profit Sharing Plan, a contributory profit-sharing plan established by the defendant McGraw-Edison Company (the Company) and administered by the defendant Trustees

of the McGraw-Edison Profit Sharing Trust (the Trustees). The parties have filed cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and have stipulated to various facts and written exhibits. Upon consideration of the applicable law, it is concluded that there are no material issues of fact in dispute and that the case is appropriate for an entry of summary judgment.

Each participant's interest in the McGraw-Edison Profit Sharing Plan was represented by two trust accounts, a stock account, consisting of shares of the common stock of the Company purchased by the Trustees, and a general account, consisting of a proportionate share of the other assets held by the Trustees. It was expressly provided that shares of Company stock would be purchased by the Trustees whenever feasible.

Normal distribution of accounts was governed by sections 7 and 8 of the profit sharing plan. A participating employee would receive payment in full (the mode of payment, i. e., lump-sum cash, transfer of stock, purchase of annuity, etc., was left to the Trustees' discretion) upon death, disability retirement, or retirement at age 62. A participant employee who for any other reason left employment with the Company prior to attaining age 62 was entitled to the aggregate of his contributions plus interest and if he had been continuously employed by the Company for five years or more a scheduled percentage of the Company's contributions. Distribution would also occur, under article VIII of the trust, upon certain "terminations" of the profit sharing plan.

The Company retained the right to amend the profit sharing plan in section 10 and the trust in article VII, except that the Company could not receive any repayment from the trust and the moneys could only be spent for the benefit of employees. It was also a condition of the Company's right to amend that the value of each participant's account would be the same or greater than that to which he would be entitled were he to terminate his employment on the date of amendment.

Plaintiffs, who number over 500 in this action,[1] were members of locals 4561, 3968 and 6449 of the United Steelworkers of America and were employed by the Power Systems Division, Canonsburg, Pennsylvania Plant, of the Company under collective bargaining agreements which provided that the terms of the profit sharing plan be extended to them. In October of 1973, the said collective bargaining agreements expired and the members of locals 4561, 3968 and 6449 went on strike. As a result of the ensuing collective bargaining, it was agreed, inter alia, that a fixed-benefit pension plan would replace the profit sharing plan. The collective bargaining agreement was ratified in February of 1974 by a majority of the members of locals 4561, 3968 and 6449.

The newly negotiated pension plan entitles employees or their beneficiaries to a fixed monthly payment in an amount determined by multiplying the employee's number of years of service by $8.00. Certain employees (including all of the plaintiffs) were also given the right to have their pension benefits calculated on the basis of an "adjusted profit sharing account" with respect to years of service accrued prior to February, 1974. It is undisputed that by reason of the valuation formula applied in crediting employees for their past services, the value of the various plaintiffs' pension rights was measurably greater as of the date of the 1974 agreement than the value of their account rights under the profit sharing plan. In return, all participating employees were to be removed from the profit sharing plan, and the plan funds representing past employer contributions on behalf of these employees were to be used to provide the initial funding for the pension plan. The portion of employees' accounts attributable to their own contributions were to be held in trust separately for

---

1. Rule 23 of the Federal Rules of Civil Procedure is not invoked, and class action certification is not sought.

later distribution to them with interest. Additional funding for the new pension plan was to be provided by the Company as needed.

The profit sharing plan and trust agreements did not expressly reserve to the Company and the locals the right to modify terms through collective bargaining, nor did they provide for the transfer of profit sharing funds out of the trust. Nevertheless, pursuant to and shortly after the collective bargaining agreement of February 10, 1974, the Company ceased profit sharing contributions on behalf of members of locals 4561, 3968 and 6449. In December, 1974, the Company amended the profit sharing plan to formally remove the members of those locals from the profit sharing plan. The amendment also directed the trustees to segregate the trust funds allocable to these employees' accounts, which the Trustees have done, pending disposition of this action.

The essence of the plaintiffs' complaint is that their right to the trust accounts under the profit sharing plan were vested and could not be affected by the 1974 collective bargaining agreement and ratification. Plaintiffs also contend that, their interests in the profit sharing plan and trust having been "terminated," a distribution of their relative interests is necessary. In response, both the Company and the Trustees contend that the plaintiffs are bound by the 1974 collective bargaining agreement and that the profit sharing plan and trust were not "terminated."

Since the plaintiffs seek a remedy for contractual rights arising from a collective bargaining agreement, this court has subject-matter jurisdiction under § 301(a) of the Labor Management Relations Act of 1947.[2] *Smith v. Evening News Association,*

371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962).

The plaintiffs rely heavily on the decision of the district court in *Hauser v. Farwell, Ozmun, Kirk & Co.,* 299 F.Supp. 387 (D.Minn.1969), in which former employees brought an action against the employer-company and their bargaining agent union contending that a plant close-down agreement entered into between the defendants unlawfully eliminated pension rights granted the plaintiffs by an earlier collective bargaining agreement. The pension rights in question were described in the original agreement as being *"fully vested in each participant,"* *id.* at 390, and the court found accordingly that the rights were vested at the time the union attempted to bargain them away. Reasoning that "whereas a Union may bargain as to prospective matters such as seniority rights, future conditions of employment etc., it cannot bargain away the accrued or vested rights of its members," the district court held that the former employees were to be restored to the pension rights which accrued under the original pension agreement. 299 F.Supp. at 393, 396, discussing *Elgin, Joliet & Eastern Ry. v. Burley,* 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945), adhered to, 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928 (1946).

Unlike the agreement in *Hauser,* no rights under the profit sharing plan and trust in the instant case are described as "vested." On the contrary, the plaintiffs' rights thereunder were substantially limited by the broad power of amendment reserved to the company, including the company's right to eliminate all of the participant's interests save his right to that to which he would have been entitled had he resigned on the date of the amendment.[3]

---

2. Section 301(a) provides:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

29 U.S.C. § 185(a) (1970).

3. Section 10 of the Profit Sharing Plan provides:

"The company may amend or discontinue the plan at any time upon written notice to the other employers, but no employer will benefit thereby, as provided in the trust agreement. Participants will be notified of any such

See, *e. g., Jackson v. Trans World Airlines, Inc.*, 457 F.2d 202 (2d Cir. 1972); *Genevese v. Martin-Marietta Corp.*, 312 F.Supp. 1186 (E.D.Pa.1969). Any other expectancies under the plan cannot be deemed "vested." The only profit-sharing plan which might be considered "vested" in the plaintiffs on February 10, 1974—the resignation *values* of their accounts—were unaffected by the collective bargaining agreement, which more than adequately preserved for each participant the entire *value* of his profit sharing account as of that date.

■ The provisions of the profit sharing plan having been extended to the plaintiffs in this case through prior collective bargaining, a transition from profit sharing to a fixed-benefit pension plan was an appropriate subject of collective bargaining in February of 1974. Indeed, 29 U.S.C. § 158(a)(5) (1970), as applied in *Inland Steel Co. v. NLRB*, 170 F.2d 247 (7th Cir. 1948), compelled McGraw-Edison to negotiate on the subject once it was proposed by the unions. It was within the power of locals 4561, 3968 and 6449 and the Company to negotiate and determine the terms of the pension plan effected by the 1974 collective bargaining agreement, so long as those terms did not affect the vested rights of employees established by prior agreements. *Elgin, Joliet & Eastern Ry. v. Burley*, 325 U.S. 711, 739, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945). The subsequent amendment to the profit sharing plan adopted in accordance with the collective bargaining agreement was also within the authority reserved to the Company under the terms of the profit sharing plan itself. See Note 3 *supra*.

The plaintiffs, nevertheless, contend that they are entitled to a distribution under the terms of the profit sharing plan and trust, asserting that the Company by agreeing with the locals to remove these bargaining unit employees from the profit sharing plan, caused a "termination" of the plan which triggered the following provision:

"Upon termination of the plan as respects all employers, each participant's share of the trust fund shall be fully vested in him and shall be distributed to him in accordance with the terms of the plan. Upon termination of the plan as respects any employer, the trustees shall distribute to each participant employed by such employer his share in the trust fund in accordance with the terms of the plan . . . ." Trust Agreement art. VIII.

■ It is concluded, however, that any inconsistency between the terms of the profit sharing trust and the terms of the collective bargaining agreement of 1974, subsequently implemented by appropriate amendment to the profit sharing trust, must be resolved in favor of the collective bargaining agreement, the most recent specification of the rights and obligations of the parties concerned.

An appropriate order will be entered.

## ORDER

AND NOW, this 30th day of September, 1976, for the reasons stated in the foregoing Memorandum, the defendants' Motion for Summary Judgment is hereby granted.

IT IS ORDERED that judgment be and the same is hereby entered in favor of McGraw-Edison Company and Trustees of the McGraw-Edison Company Profit Sharing Trust, defendants, and against Valentino Bianchin, et al., plaintiffs.

amendment or discontinuance within a reasonable period of time thereafter."

The Trust Agreement provides in article VII–1:

"*Amendment.* This trust agreement and the plan may be amended from time to time by the company, except as follows:

"(a) The duties and liabilities of the trustees cannot be changed substantially without their consent;

"(b) Under no condition shall any such amendment result in the return or repayment to any employer of any portion of the trust fund or the income therefrom or result in the distribution of the trust fund for the benefit of anyone other than employees of the employers and their beneficiaries;

"(c) No such amendment shall reduce the value of a participant's share in the trust fund below an amount equal to the amount to which he would have been entitled if he had resigned from the service of all of the employers on the date of such amendment."